NO. 23-2568

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

JANE DOE #1, a minor, by her mother and next friend,
JANE DOE #2,

*Plaintiff-Appellee*,

v.

MUKWONAGO AREA SCHOOL DISTRICT and
JOSEPH KOCH, in his official capacity as Superintendent of the
Mukwonago Area School District,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Eastern District of Wisconsin, Case No. 2:23-cv-00876
The Honorable Judge Lynn Adelman

**REDACTED BRIEF OF PLAINTIFF-APPELLEE,**
JANE DOE #1, a minor, by her mother and next friend, JANE DOE #2

Victoria Davis Dávila
Robert Theine Pledl
DAVIS & PLEDL S.C.
1661 N. Water Street, Suite 410
Milwaukee, WI 53202
Phone: (414) 667-0390
Fax: (414) 978-7282
vldd@davisandpledl.com
rtp@davisandpledl.com

Glenn Schlactus (counsel of record)
Gemma Donofrio
Emily Curran
Nicholas Abbott
RELMAN COLFAX PLLC
1225 19th Street, NW, Suite 600
Washington, DC 20036
Phone: (202) 728-1888
Fax: (202) 728-0848
gschlactus@relmanlaw.com
gdonofrio@relmanlaw.com
ecurran@relmanlaw.com
nabbott@relmanlaw.com

*Attorneys for Plaintiff-Appellee*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-2568</u>

Short Caption: <u>Jane Doe #1 v. Mukwonago Area School District, et al.</u>

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Jane Doe #1; Jane Doe #2</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Relman Colfax, PLLC; Davis and Pledl, S.C.</u>

(3) If the party, amicus or intervenor is a corporation:

  i) Identify all its parent corporations, if any; and

  <u>N/A</u>

  ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  <u>N/A</u>

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>/s/ Glenn Schlactus</u> Date: <u>08/24/2023</u>

Attorney's Printed Name: <u>Glenn Schlactus</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☑ No ☐

Address: <u>1225 19th Street NW Suite 600, Washington, DC 20036</u>

Phone Number: <u>202-728-1888</u> Fax Number: <u>202-728-0848</u>

E-Mail Address: <u>gschlactus@relmanlaw.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2568

Short Caption: Jane Doe #1 v. Mukwonago Area School District

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Plaintiff Jane Doe # 1 and Jane Doe #2

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Relman Colfax PLLC; Davis & Pledl, SC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Not applicable

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Not applicable

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    Not applicable

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    Not Applicable

Attorney's Signature: /s/ Robert Theine Pledl    Date: August 18, 2023

Attorney's Printed Name:  Robert Theine Pledl

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address:  1661 N. Water Street - Suite 410

    Milwaukee, WI  53202

Phone Number:  414-667-0390    Fax Number:  414-978-7282

E-Mail Address: rtp@davisandpledl.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2568

Short Caption: Jane Doe #1 v. Mukwonago Area School District, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Jane Doe #1; Jane Doe #2

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Relman Colfax, PLLC; Davis and Pledl, S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Gemma Donofrio    Date: 8/28/2023

Attorney's Printed Name: Gemma Donofrio

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 1225 19th Street NW Suite 600, Washington, DC 20036

Phone Number: 202-728-1888    Fax Number: 202-728-0848

E-Mail Address: gdonofrio@relmanlaw.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2568

Short Caption: Jane Doe v. Mukwonago Area School District, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Jane Doe #1; Jane Doe #2

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Relman Colfax, PLLC; Davis and Pledl, S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Emily Curran     Date: 08/28/2023

Attorney's Printed Name:  Emily Curran

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  1225 19th Street NW Suite 600, Washington, DC 20036

Phone Number: 202-728-1888     Fax Number:  202-728-0848

E-Mail Address: ecurran@relmanlaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2568

Short Caption: Jane Doe v. Mukwonago Area School District, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Jane Doe #1; Jane Doe #2

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Relman Colfax, PLLC; Davis and Pledl, S.C.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Nicholas Abbott      Date: 08/28/2023

Attorney's Printed Name: Nicholas Abbott

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✓]

Address: 1225 19th Street NW Suite 600, Washington, DC 20036

Phone Number: 202-728-1888      Fax Number: 202-728-0848

E-Mail Address: nabbott@relmanlaw.com

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-2568</u>

Short Caption: <u>Jane Doe #1 v. Mukwonago Area School District et al</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Plaintiff Jane Doe #1 and Jane Doe #2</u>

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Relman Colfax PLLC; Davis & Pledl, SC</u>

(3)   If the party, amicus or intervenor is a corporation:

i)   Identify all its parent corporations, if any; and

<u>Not Applicable</u>

ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

<u>Not applicable</u>

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>Not applicable</u>

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>Not applicable</u>

Attorney's Signature: <u>/s/ Victoria Davis Davila</u>   Date: <u>08/28/2023</u>

Attorney's Printed Name: <u>Victoria Davis Davila</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: <u>1661 N. Water Street - Suite 410</u>

<u>Milwaukee, WI 53202</u>

Phone Number: <u>(414) 667-0390</u>   Fax Number: <u>414-978-7282</u>

E-Mail Address: <u>vldd@davisandpledl.com</u>

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iii

JURISDICTIONAL STATEMENT .......................................................................1

INTRODUCTION AND STATEMENT OF THE ISSUE ..........................................1

STATEMENT OF THE CASE..............................................................................3

   I.   FACTUAL BACKGROUND ......................................................................3

       A.   Appellee Used the Girls' Restrooms During Her First Three Years
            Attending School in MASD without Incident ...............................3

       B.   MASD's Sudden Discriminatory Refusal to Permit Appellee to Use School
            Restrooms Consistent with Her Gender Identity.........................5

       C.   Harm to Jane Doe #1 .................................................................8

       D.   MASD's Attempts to Conceal its Discrimination by Use of Special
            Education and Section 504 Processes .........................................9

   II.   Relevant Procedural History .......................................................10

SUMMARY OF ARGUMENT ............................................................................12

STANDARD OF REVIEW .................................................................................13

ARGUMENT ...................................................................................................14

   I.   The District Court Correctly Found that Appellee Was Entitled to a
       Preliminary Injunction Based on the Seventh Circuit's Controlling
       Decisions in *Whitaker* and *Martinsville* ..........................................14

       A.   This Case Is Governed by Unambiguous Seventh Circuit Precedent .......15

       B.   The District Court Correctly Concluded that Appellee Is Likely to
            Succeed on the Merits of Her Title IX and Equal Protection Claims........20

            1.   Appellee Demonstrated a Likelihood of Success on the Merits of Her
                Title IX Claim ..................................................................21

            2.   Appellee Demonstrated a Likelihood of Success on the Merits of Her
                 Equal Protection Claim.......................................................24

            3.   There is No Basis for the Court to Overturn
                 Whitaker and Martinsville...................................................27

       C.   The District Court Properly Concluded that Appellee Would Sustain
            Irreparable Harm in the Absence of a Preliminary Injunction .................32

1. Appellee Demonstrated that She Experienced Immense Harm Due to MASD's Policy and that She Would Experience Irreparable Harm without an Injunction ............................................................................. 32

2. MASD's Alleged Policy Exceptions and Special Education Referral Are Immaterial to the Harm Inflicted on Appellee Absent a Preliminary Injunction ............................................................................. 34

D. The District Court Correctly Found that the Balance of Harms and Public Interest Weighed Strongly in Favor of Appellee ......................................... 39

E. Appellants' Extra-Record Factual Assertions May Not Be Considered .... 42

II. The District Court Provided Appellants with Ample Opportunity to Enter Evidence Into the Record ................................................................. 43

A. Appellants Had Clear Notice Prior to the Preliminary Injunction ........... 44

B. Appellants Had the Opportunity to Submit Record Evidence Prior to Issuance of the Preliminary Injunction ....................................................... 45

C. The District Court Was Not Required to Hold an Evidentiary Hearing ... 46

CONCLUSION ...................................................................................... 47

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,*
  75 F.4th 760 (7th Cir. 2023) ..................................................................*passim*

*B.E. and S.E. et al v. Vigo Cnty. Sch. Coop. et al,*
  2:21-cv-00415, ECF Nos. 46, 48 (S.D. Ind. 2022) .......................................... 46, 47

*Bostock v. Clayton Cnty.,*
  140 S. Ct. 1731 (2020) ........................................................................*passim*

*City of Cleburne, Tex. v. Cleburne Living Center,*
  473 U.S. 432 (1985) ............................................................................... 24

*Cooper v. Salazar,*
  196 F.3d 809 (7th Cir. 1999) ................................................................... 13

*Doe v. University of Southern Indiana,*
  43 F.4th 784 (7th Cir. 2022) ................................................................... 39

*Ezell v. City of Chicago,*
  651 F.3d 684 (7th Cir. 2011) ................................................................... 36

*Fellowes, Inc. v. Changzhou Xinrui Fellowes Off. Equip. Co.,*
  No. 11 C 6289, 2012 WL 3544841 (N.D. Ill. Aug. 16, 2012)................................. 43

*Fitzgerald v. Barnstable Sch. Comm.,*
  555 U.S. 246 (2009) ............................................................................... 35

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.,*
  549 F.3d 1079 (7th Cir. 2008) ................................................................. 32

*People of State of Ill. ex rel. Hartigan v. Peters,*
  871 F.2d 1336 (7th Cir. 1989) ............................................................... 43, 44

*Henn v. Nat'l Geographic Soc.,*
  819 F.2d 824 (7th Cir. 1987) ................................................................... 42

*Ill. Republican Party v. Pritzker,*
  973 F.3d 760 (7th Cir. 2020) ................................................................... 21

*Joelner v. Vill. of Washington Park,*
  378 F.3d 613 (7th Cir. 2004) ................................................................... 39

*McClendon v. Ind. Sugars, Inc.*,
 108 F.3d 789 (7th Cir. 1997) ................................................................. 42

*Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*,
 354 F.3d 249 (4th Cir. 2003) ................................................................. 39

*Promatek Indus., Ltd. v. Equitrac Corp.*,
 300 F.3d 808 (7th Cir. 2002), *as amended* (Oct. 18, 2002)................... 47

*Santos v. United States*,
 461 F.3d 886 (7th Cir. 2006) ................................................................. 27

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
 251 F.3d 814 (9th Cir. 2001) ................................................................. 36

*Socialist Workers Party v. Ill. State Bd. Of Elections*,
 566 F.2d 586 (7th Cir. 1977) ................................................................. 44

*Stuller, Inc. v. Steak N Shake Enterprises, Inc.*,
 695 F.3d 676 (7th Cir. 2012) ................................................................. 14

*Syntex Ophthalmics, Inc. v. Tsuetaki*,
 701 F.2d 677 (7th Cir. 1983) ................................................................. 44

*United States v. Virginia*,
 518 U.S. 515 (1996) ............................................................................... 24

*Valencia v. City of Springfield, Illinois*,
 883 F.3d 959 (7th Cir. 2018) ................................................................. 14

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
 858 F.3d 1034 (7th Cir. 2017) ........................................................*passim*

*Wilson v. Cook Cnty.*,
 937 F.3d 1028 (7th Cir. 2019) ............................................................... 14

*Winter v. Nat. Res. Def. Council*,
 555 U.S. 7 (2008) ............................................................................ 14, 39

## Constitional Provisions and Statutes

U.S. Const., amend. XIV...............................................................*passim*

Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq.* ...................... 37

Rehabilitation Act of 1973, 29 U.S.C. § 794 ...................................... 37, 38

Title IX, 20 U.S.C. § 1681 *et seq.* ............................................................*passim*

20 U.S.C. § 1686............................................................ 18, 29, 30

28 U.S.C. § 1292 ............................................................................ 1

28 U.S.C. § 1331 ............................................................................ 1

28 U.S.C. § 1343 ............................................................................ 1

42 U.S.C. § 1983 ............................................................................ 1

## Other Authorities

34 C.F.R. § 104.3 ......................................................................... 37

34 C.F.R. § 104.4 ......................................................................... 37

34 C.F.R. § 106.33 ........................................................... 16, 18, 29

45 C.F.R. § 84.33 ......................................................................... 37

118 Cong. Rec. 5808 (1972) ........................................................ 31

*Discrimination Against Women: Hearings Before the H. Special*
   *Subcomm. on Educ. of the Comm. on Educ. and Labor on Section*
   *805 of H.R. 16098*, 91st Cong. 299 (1970)............................. 30

Fed. R. App. P. 10 ..........................................................23, 26, 41, 42

Fed. R. App. P. 30 ......................................................................... 3

Fed. R. Civ. P. 65 ................................................................... 11, 43

Model Local Educ. Agency Special Educ. Policies and Procedures, Wis.
   Dep't of Pub. Instruction (Jul. 2022), https://dpi.wi.gov/sites/default/
   files/imce/sped/pdf/policy-model.pdf ..................................... 37

## JURISDICTIONAL STATEMENT

As required by Circuit Rule 28(b), Appellee states that Appellants'
jurisdictional statement is not complete and correct. The District Court has subject-
matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343(a)(3). Plaintiff's
claims raise federal questions under Title IX of the Education Amendments of 1972,
20 U.S.C. § 1681 *et seq.* ("Title IX"), and the Fourteenth Amendment to the United
States Constitution under 42 U.S.C. § 1983. Appellants appeal a preliminary
injunction entered against them on July 11, 2023, by the U.S. District Court for the
Eastern District of Wisconsin, Hon. Lynn Adelman. This Court has jurisdiction to
review that injunction under 28 U.S.C. § 1292(a)(1). Appellants timely filed their
Notice of Appeal on August 9, 2023.

In their Jurisdictional Statement, Appellants argue in a footnote that claims
against Defendant Koch are redundant and should be dismissed, alleging that
Mukwonago Area School District "is the proper and only party." Appellants' Br. at 5
n.1. Because Appellants have not filed a motion to dismiss claims against
Defendant Koch and have not otherwise presented this issue to the District Court,
this issue is not before this Court and Appellee does not address it here.

## INTRODUCTION AND STATEMENT OF THE ISSUE

Six years ago in *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1
Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017), this Court held that Title IX and the
Equal Protection Clause require a school district to allow a transgender student to
use the restroom in school consistent with their gender identity. This Court
reaffirmed *Whitaker* less than three months ago in *A.C. by M.C. v. Metro. Sch. Dist.*

1

*of Martinsville*, 75 F.4th 760 (7th Cir. 2023). The Mukwonago Area School District ("MASD") nonetheless refused to allow Appellee, a transgender girl, to use the girls' restrooms. The District Court followed binding precedent and entered a preliminary injunction in Appellee's favor. *Whitaker* and *Martinsville* are directly on point and compel affirmance.

Jane Doe #1 is a transgender 11-year-old girl attending sixth grade in MASD. Jane Doe #1 has presented as a girl at school since first grade. She had utilized the girls' restroom at MASD since third grade without incident, until MASD passed a restroom policy in May and June 2023 mandating that students use restrooms according to their sex assigned at birth. Recognizing that Jane Doe #1's situation is identical in all relevant respects to those of the transgender students in *Whitaker* and *Martinsville*, the District Court entered a preliminary injunction allowing Jane Doe #1 equal use of the girls' restrooms at school.

The District Court's Decision and Order rests on its findings that (1) Appellee demonstrated a likelihood of success on the merits of her claims under Title IX and the Equal Protection Clause of the Fourteenth Amendment, (2) Appellee would likely suffer irreparable harm in the absence of an injunction, (3) the balance of harms weighed strongly in favor of granting an injunction, and (4) the public interest weighed strongly in favor of granting an injunction. As the District Court noted, this case is not factually distinguishable from *Whitaker*, in which the Seventh Circuit established that a policy preventing a transgender student from using the bathroom that matches their gender identity constitutes unlawful

discrimination under Title IX and the Equal Protection Clause of the Fourteenth Amendment. *Whitaker* was recently affirmed by this Court in *Martinsville*, in which this Court held, *inter alia*, that the Supreme Court's decision in *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020), strengthened its holding in *Whitaker*.

The question presented by this case is whether the District Court abused its discretion by entering this limited preliminary injunction, as dictated by Seventh Circuit precedent in *Whitaker* and *Martinsville* and consistent with *Bostock*.

## STATEMENT OF THE CASE

### I.     FACTUAL BACKGROUND

#### A.     Appellee Used the Girls' Restrooms During Her First Three Years Attending School in MASD without Incident

Appellee is an 11-year-old transgender girl living in Waukesha County, Wisconsin. She is a sixth-grade student at Prairie View Elementary School ("Prairie View"), an elementary school in MASD. Suppl. Appx. at A75.[1] Appellee was designated "male" on her birth certificate, but she began presenting as a girl at home at the age of three. *Id*. at A75-A76. She began presenting as a girl in school in first grade at the elementary school that she attended in another district prior to Prairie View. *Id*. at A76. She used female pronouns, grew out her hair, and wore traditional girls' clothing. *Id*.

---

[1] Appellants did not confer with Appellee regarding a Joint Appendix as required by Fed. R. App. P. 30(b)(1). Accordingly, Appellee has compiled a brief appendix of key material not captured by Appellants' Appendix. Throughout this brief, Appellee cites Appellants' Appendix as "Short Appx." and Appellee's Appendix as "Suppl. Appx."

Appellee has been diagnosed with gender dysphoria by a medical doctor. *Id.* at A31, A76. That diagnosis has been provided to Appellants. *Id.* at A79. She is currently seeing a therapist to support her emotional and psychological wellbeing as a transgender child. *Id.* at A31, A84.

Appellee moved to Waukesha County and was enrolled in Prairie View at the beginning of third grade. *Id.* at A75. When Appellee enrolled at Prairie View, her mother, Jane Doe #2,[2] disclosed her transgender status to a few Prairie View staff members to help ensure her daughter's safety at school. *Id.* at A76-77. Jane Doe #2 also met with the then-Superintendent, Shawn McNulty, who agreed that Appellee would be treated as a girl and would use girls' restrooms at school. *Id.* at A77. Prairie View staff were supportive and referred to Appellee by her female name and female pronouns. *Id.*

Appellee has identified as a girl, used female pronouns, and presented physically as a girl during the entirety of her time at Prairie View. *Id.* at A77. Just like other female students, Appellee participates with girls in school activities when they are separated by gender. *Id.* She has also used the girls' bathroom throughout her time at Prairie View. *Id.* When Appellee attended a summer program at Mukwonago High School in 2021 and 2022, she used the girls' restroom just like she did during the regular school year without incident. *Id.* at A77, A81. Until spring

---

[2] Jane Doe #2's legal name has recently changed. This name change does not bear on this case, but for the Court's information, her legal name can be found in the Sealed Notice of Name Change filed in the District Court. *See* ECF No. 36.

2023, Appellee did not encounter resistance to her use of facilities and participation in school activities consistent with her gender identity. *Id.* at A77.

### B.    MASD's Sudden Discriminatory Refusal to Permit Appellee to Use School Restrooms Consistent with Her Gender Identity

MASD abruptly changed course in the spring of 2023. Rather than continue to allow Appellee to use the girls' restroom, the district put a policy in place (first by email in May, then more formally in June) to prevent Appellee from using the restroom consistent with her gender identity. MASD appeared aware that it would be violating the law by preventing Appellee from using the girls' restroom, yet it adopted the policy to do just that. School officials subsequently began surveilling Appellee's bathroom usage.

Around early April 2023, the Prairie View principal informed Jane Doe #2, Appellee's mother, that the school had begun receiving calls from other parents about Appellee's bathroom use in school. *Id.* at A77. The principal also informed Jane Doe #2 that some parents and other residents of Waukesha County had created a Facebook group called "Mukwonago Parents for Normal Education," and group members were writing posts alleging that Appellee was dangerous and that her parents might be pedophiles. *Id.*

On May 15, 2023, the MASD School Board held a closed executive meeting about Appellee. Board members discussed Appellee's bathroom use and raised the possibility of forcing her to use a separate bathroom designated solely for transgender students or a separate, single-occupancy gender-neutral restroom. *Id.* at A77-A78. Jane Doe #2 attended this meeting and explained that the options

5

being considered by the Board would single out Appellee from her peers, force her to reveal that she is transgender to other students without her consent, and stigmatize her. *Id.* at A78. A School Board member told Jane Doe #2 that the Board was "stuck between a rock and a hard place," explaining that it could either upset parents who opposed Jane Doe #1 using the girls' restroom at school by allowing her to continue to do so, or it could be sued by Jane Doe #2 if it prevented Jane Doe #1 from using the girls' bathroom. *Id.*

On May 22, 2023, the MASD School Board held a public meeting at which several members of the public expressed that they felt Appellee should not use the girls' restroom, though no one identified any specific danger posed by her doing so. *Id.* at A78-A79. The School Board did not make a decision at this meeting, but then-Superintendent McNulty told Jane Doe #2 the next morning that Jane Doe #1 could continue using the girls' restroom for the remainder of the school year if she provided a doctor's note confirming Jane Doe #1's gender dysphoria diagnosis. *Id.* at A79. Jane Doe #1's health care provider promptly provided this documentation, and she continued using the girls' restroom at Prairie View. *Id.*

On May 23, 2023, the President of the MASD School Board sent an email to MASD parents and students, stating in relevant part that "[t]he School Board of the [MASD] affirms its position that students should use the locker rooms and bathrooms of their sex at birth." Short Appx. at A7 (quoting ECF No. 5-3). The email also stated that the district would develop a policy on the subject during the summer. Suppl. Appx. at A79.

6

Appellee was enrolled in a summer program known as MASD Summer Adventures, run by Appellants, that began on June 19, 2023, and was held at Mukwonago High School. Suppl. Appx. at A81. Again, Appellee had attended the summer program the prior two summers, and had used the girls' restroom during those summers without incident, just as she did at Prairie View during the school year since third grade. *Id.* On June 16, 2023, three days before the program was to begin, Jane Doe #2 received an email that attached a letter from Joe Koch, the new superintendent of MASD. Suppl. Appx. at A33-A34. The letter reiterated the MASD School Board's May 23, 2023 communication, and stated that, during the summer program, Jane Doe #1 could use only the male bathroom, a single-occupancy gender-neutral restroom in the health office, or the gender-neutral restroom used by adult administrators at the school. *Id.* at A34. That is, Jane Doe #1 could not use the girls' restrooms despite her identification as a girl.

On multiple occasions during the summer program, Jane Doe #1 reported to her mother that her bathroom usage was monitored by adults at Mukwonago High School and she was pulled out of class and taken to the principal's office in response to her using the girls' bathroom. *Id.* at A49, A81-A83. These interactions upset Jane Doe #1, as they involved school officials telling her to either use a bathroom that only adult administrators normally use or use the boys' bathroom when she is not a boy. *Id.* at A82. MASD staff also sent several emails and placed several calls to Jane Doe #2 notifying her of Appellee's "violation" of the bathroom policy. *Id.* at A41, A46-47, A51-A52, A54-A55, A81-A82. Additionally, MASD staff took Plaintiff on a

"tour" of the boys' and gender-neutral restrooms at Mukwonago High School. *Id.* at A46, A81.

On June 26, 2023, MASD formalized its May 23, 2023 communication by adopting a bathroom policy for the district, known as Policy 5514. *Id.* at A74, A82-A83. Policy 5514 requires students to use "restroom and locker room facilities on District property and at District-sponsored events according to each student's original sex assigned at birth." *Id.* at A74. Policy 5514 states explicitly that MASD will "develop administrative guidelines for the implementation" of the policy. *Id.* To Appellee's knowledge, MASD has not developed any such administrative guidelines to implement Policy 5514 to date.

### C.      Harm to Jane Doe #1

Appellants' facially discriminatory treatment of Jane Doe #1, in violation of Title IX and the Equal Protection Clause of the Fourteenth Amendment, has greatly harmed her. Since Appellants' conduct as described herein began in the spring of 2023, Appellee experienced escalating bullying and harassment from other students, including students taunting her about her genitalia, asking her whether she is a girl or a boy, and telling her that she is a "freak." *Id.* at A83. As a result, Appellee has suffered from significant depression and anxiety, and she has refused to board the school bus on multiple occasions due to fear of facing further harassment. *Id.* at A83-A84. Appellee's mother has also expressed concern that Appellee would experience physical harm due to gastrointestinal problems if she were to refrain from using the bathroom at school, as cautioned by Appellee's physician. *Id.* at A82.

Jane Doe #1 experienced thoughts of self-harm after MASD staff took her on a "tour" of the boys and gender-neutral restrooms at Mukwonago High School at the beginning of the summer program. *Id.* at A81. She was also distressed when school officials pulled her out of class in the summer program to take her to the principal's office for using the girls' restroom. *Id.* at A82. Prior to the issuance of a TRO by the District Court on July 6, 2023, she came home from the summer program crying and upset almost every day, explaining to her mother that MASD staff singled her out, surveilled her, and made her feel like she is wrong for her identity. *Id.*at A84. She had started having nightmares multiple times per week that involved fellow students injuring or killing her. *Id.* She also started asking her mother, "Why am I even alive?" *Id.*

### D.    MASD's Attempts to Conceal its Discrimination by Use of Special Education and Section 504 Processes

During the week of May 23, 2023—i.e., the week that the MASD School Board sent an email to all parents and students regarding its position on bathroom usage—Jane Doe #2 received a call from Christine Bowden, MASD's Director of Pupil Services, who told her that she wanted to refer Appellee for a special education evaluation related to her ADHD and generalized anxiety diagnosis. *Id.* at A79. On May 30, 2023, Christine Bowden sent Jane Doe #2 an email about the possibility of a special education or Section 504 referral for Appellee, again referencing ADHD and anxiety. *Id.* at A67, A80. Jane Doe #2 was confused about why the school was raising the possibility of special education at this time, when plaintiff was doing well at school and did not need additional support for ADHD or

anxiety, and she thought this might be a form of retaliation for her opposition to MASD's stance on Jane Doe #1's bathroom usage. *Id.* at A79-A80.

On June 22, 2023—six days after Superintendent Koch sent Jane Doe #2 the letter indicating that Jane Doe #1 was not allowed to use the girls' restroom during the summer program—Bowden again emailed Jane Doe #2 regarding a referral. This time Bowden referenced Appellee's gender dysphoria. The email did not acknowledge the issue of restroom access or suggest in any way that a referral could lead to gender-affirming access. It only suggested that gender dysphoria could create a need for coping strategies, check-ins, and emotional regulation strategies. *Id.* at A68.

## II.    Relevant Procedural History

On June 30, 2023, Jane Doe #1, by her mother and next friend, Jane Doe #2, filed a Complaint and Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 1; Suppl. Appx. at A1-A22 (ECF No. 5-1). On July 4, 2023, Appellants filed a Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. *Id.* at A85-A99 (ECF No. 9). As the District Court noted in its Decision and Order granting Appellee's Motion for Preliminary Injunction, Short Appx. at A4-A23 (ECF No. 15) ("Decision and Order"), Appellants did not request an evidentiary hearing on the Motion. *Id.* at A12. Appellants discussed evidence submitted by Appellee in their Response, but did not object to that evidence and chose not to submit any record evidence of their own. *See*

*id.* On July 5, 2023, Jane Doe #1 filed a Reply. Suppl. Appx. at A102-A113 (ECF No. 13).

On July 6, 2023, the District Court for the Eastern District of Wisconsin issued an opinion granting a Temporary Restraining Order, prohibiting Appellants from enforcing any policy, practice, or custom that denies Jane Doe #1 access to the girls' restroom at school and school-sponsored events, and prohibiting Appellants from taking any formal or informal disciplinary action against her for doing so. *Id.* at A114-A117 (ECF No. 14). Following the issuance of the TRO, Appellants did not request a hearing on the Motion for Preliminary Injunction, nor did they attempt to submit additional record evidence. On July 11, 2023, the District Court issued an extensive Decision and Order granting the Motion for Preliminary Injunction. Short Appx. at A4-A23. The District Court also issued the Preliminary Injunction as a stand-alone order consistent with Fed. R. Civ. P. 65(d), again prohibiting Appellants from preventing Appellee from using the girls' restroom at school and school-sponsored events, and prohibiting Appellants from taking disciplinary action against Appellee for doing the same. Short Appx. A24 (ECF No. 16).

In its Decision and Order, the District Court made clear that it viewed this matter as a straightforward application of *Whitaker*. *See, e.g.,* Short. Appx. at A16 ("this case is not factually distinguishable from *Whitaker* in a way that diminishes plaintiff's likelihood of success"); *id.* at A20 ("the Seventh Circuit's application of these factors in *Whitaker* is controlling here").

11

Three weeks after the District Court issued the Preliminary Injunction, the Seventh Circuit issued its opinion in *Martinsville*. 75 F.4th at 760.

Appellants did not, through a motion for reconsideration or otherwise, argue to the District Court that they had been denied an opportunity to present evidence or to have an evidentiary hearing. Instead, on August 9, 2023, Appellants filed their Notice of Appeal. ECF No. 24.

## SUMMARY OF ARGUMENT

Affirmance of the District Court's Decision and Order is dictated by well-established Seventh Circuit precedent: *Whitaker* and *Martinsville*, which reaffirmed *Whitaker* less than three months ago. *Whitaker* and *Martinsville* held that school districts violate Title IX of the Education Amendment Act of 1972 and the Fourteenth Amendment's Equal Protection clause by denying transgender students the right to use the bathroom that aligns with their gender identity. *Whitaker*, 858 F.3d at 1039; *Martinsville*, 75 F.4th at 775. In both cases, the Seventh Circuit upheld carefully tailored injunctions just like the injunction at issue here. There is no valid basis for Appellants' express call for this Court to overturn *Whitaker* and *Martinsville*.

Contrary to Appellants' assertions—including by reliance on allegations outside the evidentiary record—this case does not meaningfully differ from *Whitaker* and *Martinsville*. The core facts of all three cases are the same; in each, a school district prevented a transgender student or students from using school restrooms that match their gender identity.

12

As in *Whitaker* and *Martinsville*, the District Court here found that Appellee demonstrated that she was likely to succeed on the merits of her claims, that she would suffer irreparable harm in the absence of an injunction, and that the balance of harms and the public interest weighed strongly in her favor. Accordingly, the District Court granted a limited preliminary injunction, preventing MASD from enforcing any policy or practice that denies Jane Doe #1 access to the girls' restroom. In doing so, the District Court assessed the facts without error, followed this Circuit's precedent, and acted well within its discretion. Appellee therefore respectfully asks this Court to affirm the District Court's Decision and Order granting the preliminary injunction, thereby ensuring that she can continue to use the girls' restroom—and, as a result, continue to learn—at school.

## STANDARD OF REVIEW

This Court's "review of a district court's grant of a preliminary injunction is deferential." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). When reviewing a District Court's issuance of a preliminary injunction, this Court "review[s] the district court's findings of fact for clear error, its legal conclusions de novo, and its balancing of the factors for a preliminary injunction for abuse of discretion." *Martinsville*, 75 F. 4th at 767 (quoting *Doe v. University of Southern Indiana*, 43 F.4th 784, 791 (7th Cir. 2022)). The question for the Seventh Circuit is "whether the judge exceeded the bounds of permissible choice in the circumstances, not what [this Court] would have done if [it] had been in [the District Court's] shoes." *Cooper*, 196

F.3d at 813 (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 390 (7th Cir. 1984)).

To obtain a preliminary injunction, a plaintiff must establish that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of an injunction, and that the balance of the equities and the public interest weigh in their favor. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012).

As this Court notes, "[w]e have stated repeatedly, and recently, that, absent a compelling reason, we will not overturn circuit precedent." *Wilson v. Cook Cnty.*, 937 F.3d 1028, 1035 (7th Cir. 2019). Where a district court finds that the moving party "possessed a reasonable likelihood of success under" multiple theories, this Court "'may affirm on any basis that appears in the record.'" *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 967 (7th Cir. 2018) (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 n.1 (7th Cir. 2012)).

## ARGUMENT

I.   **The District Court Correctly Found that Appellee Was Entitled to a Preliminary Injunction Based on the Seventh Circuit's Controlling Decisions in *Whitaker* and *Martinsville***

The District Court did not abuse its substantial discretion in granting a preliminary injunction against MASD to ensure that Jane Doe #1 can continue to use the girls' restroom at school and school-sponsored events. The District Court carefully considered the facts in the record and this Court's controlling precedent, and concluded correctly that an injunction was proper and necessary in this case.

## A.     This Case Is Governed by Unambiguous Seventh Circuit Precedent

This matter presents a straightforward application of this Court's recent precedent in *Whitaker* and *Martinsville*.[3] In both cases, the Seventh Circuit upheld preliminary injunctions prohibiting school districts from barring transgender students from using restrooms that correspond with their gender identity. The Court held in both cases that the students were likely to succeed on the merits of their Title IX and Equal Protection claims, that they would suffer irreparable harm absent relief, and that the balance of harms weighed in their favor.

"Title IX provides that no person 'shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance.'" *Whitaker*, 858 F.3d at 1046 (quoting 20 U.S.C. § 1681(a)). *Whitaker* held that:

> A policy that requires an individual to use a bathroom that does not conform with his or her gender identity punishes that individual for his or her gender non-conformance, which in turn violates Title IX.

*Id.* at 1049. The Court analyzed: the text of Title IX, which it explained does not contain any language limiting "sex" to a "biological" concept, *id.* at 1047; applicable Title VII and Title IX precedent, including Supreme Court precedent affirming the cognizability of sex discrimination claims based on sex stereotyping, *id.* at 1047-48;

---

[3] On October 13, 2023, the Supreme Court docketed a petition for writ of certiorari by the Metropolitan School District of Martinsville, asking the Court to grant the petition appealing the Seventh Circuit's decision in *Martinsville*. The filing of a certiorari petition does not alter the fact that *Martinsville* is good law in the Seventh Circuit, and allowing the filing of such petitions to affect the application of binding precedent would throw the law into chaos and create perverse incentives for litigants.

and a Title IX implementing regulation (34 C.F.R. § 106.33) that permits "separate, but comparable, bathroom, shower, and locker facilities." *Id.* at 1047. The Court further held that "[p]roviding a gender-neutral alternative" does not cure the Title IX violation when a school district bars a transgender student from using the restroom that corresponds with their gender identity. *Id.* at 1050. It also explained that so-called "alternative" options offered by the school district "were not true alternatives" in any event because of their distance from classrooms and the stigma associated with their mandated use. *Id.*

With respect to the Equal Protection Clause, *Whitaker* first held that dictating "which bathroom a student may use based upon the sex listed on the student's birth certificate . . . is inherently based upon a sex-classification and heightened review applies." *Id.* at 1051. Specifically, a school district must have an "exceedingly persuasive" justification to force a transgender student to use the bathroom that corresponds with their sex assigned at birth, i.e., the classification must serve "important governmental objectives" and "the discriminatory means employed [must be] substantially related to the achievement of those objectives." *Id.* at 1050 (quoting *United States v. Virginia*, 518 U.S. 515, 524, 533 (1996)).

*Whitaker* then addressed the school district's proffered justification that its policy protected the privacy rights of other students and found that justification insufficient for two reasons. *Id.* at 1052-53. First, the Court held that there was no evidence that other students ever complained, even though the transgender student had used the bathroom reflecting his gender identity for nearly six months before

16

the school's interference. *Id.* at 1052. Second, privacy inside the bathroom was preserved by stall doors, and "[c]ommon sense tells us that the communal restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall." *Id.*

Turning to the rest of the factors used to evaluate a motion for a preliminary injunction, *Whitaker* held that the student was likely to suffer irreparable harm absent preliminary relief. *Id.* at 1045. The Court rejected the school district's assertion that, because it offered the student a gender-neutral bathroom, any harm was "self-inflicted". *Id.* at 1045-46. The Court explained that this "miss[ed] the point"—forcing the student to use a separate bathroom "exacerbated the harm" and "further stigmatized" him. *Id.* at 1045. Moreover, prospective harm like this cannot be cured by monetary damages. *Id.* at 1046. With respect to the balancing of harms, *Whitaker* again found that no evidence supported the school district's "speculative" contentions about students' privacy rights. *Id.* at 1054.

*Martinsville* involved two consolidated cases. The school districts argued primarily for overruling *Whitaker*, as do Appellants here, because the facts in each were comparable to *Whitaker*, as they are here. This Court declined. As Judge Easterbrook put it, "[g]iven *Whitaker*, this is an easy case for the plaintiffs." 75 F.4th at 775 (Easterbrook, J., concurring). But *Martinsville* did not follow *Whitaker* blithely. It gave serious consideration to several arguments, including ones Appellants repeat here (as discussed below), and rejected them all.

17

For instance, the school districts in *Martinsville* alleged that the Supreme Court's intervening decision in *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020)—that firing an employee for being gay or transgender violates Title VII—somehow undermined *Whitaker*. The school districts argued that this followed from the Supreme Court's statement that it was not addressing the impact of its decision on "sex-segregated bathrooms, locker rooms, and dress codes." 75 F.4th at 769 (quoting *Bostock*, 140 S. Ct. at 1753). But, as this Court found, that statement merely reflected the ordinary judicial practice of speaking only to the question presented. *Id.* The school districts had it backwards: "*Bostock* strengthens *Whitaker*'s conclusion," *Martinsville* explained, and "[a]pplying *Bostock*'s reasoning to Title IX, we have no trouble concluding that discrimination against transgender persons is sex discrimination for Title IX purposes, just as it is for Title VII purposes." *Id.*

*Martinsville* also considered and rejected the school district's critique of *Whitaker* for a "supposed failure to mention 20 U.S.C. § 1686." *Id.* That part of Title IX permits "separate living facilities for the different sexes." 20 U.S.C. § 1686. To the contrary, *Martinsville* explained that *Whitaker* did, in fact, consider the relevant implementing regulation, 34 C.F.R. § 106.33. 75 F.4th at 770. Moreover, *Martinsville* found that Section 1686 was irrelevant in this context because (as here) the student was not arguing against sex-segregated facilities; the question, instead, was "who counts as a 'boy' for the boys' rooms, and who counts as a 'girl' for the girls' rooms." *Id.*

18

Last, *Martinsville* rejected the notion that the Circuit split on the question of transgender student bathroom access is a valid ground for reversing *Whitaker*. *Id.* at 770-71. In 2020 the Fourth Circuit agreed with *Whitaker* while the Eleventh Circuit in 2022 reached a contrary conclusion about the application of Title IX and the Equal Protection Clause. *Id.* at 771. But the Court stated that "it makes little sense for us to jump from one side of the circuit split to the other, particularly in light of the intervening guidance in *Bostock*," and doing so "would not be consistent with a proper regard for the stability of our decisions." *Id.* (quoting *Buchmeier v. United States*, 581 F.3d 561, 565 (7th Cir. 2009)). Though Judge Easterbrook concurred only in the judgment, he stated that "I am no more disposed than my colleagues to overrule *Whitaker*." *Id.* at 775 (Easterbrook, J., concurring).

With *Whitaker* reaffirmed, its application in *Martinsville* was straightforward. In *Martinsville*, sex-segregated locker rooms with stalls to change for gym class were used in one of the schools. *Id.* at 766. *Martinsville* found no clear error in the District Court's factual conclusion that such locker room use is comparable to bathroom use, and therefore implicates Title IX in the same way. *Id.* at 772.

*Martinsville* likewise applied heightened scrutiny under the Equal Protection Clause. As in *Whitaker*, it rejected the proffered justification for discriminating against transgender students of other students' privacy. *Id.* at 772-73. It did so for the same reasons: no students had complained despite prior use, and the school district did "not identif[y] how A.C.'s presence behind the door of a bathroom stall

19

threatens student privacy." *Id.* at 773. The fundamental problem was not even the

school districts' lack of evidence; it was that they were "fighting a phantom" because

"[g]ender-affirming facility access does not implicate the interest in preventing

bodily exposure, because there is no such exposure." *Id.* As in *Whitaker*, the school

districts were ignoring the stall doors. *Id.*

With respect to the balancing of equities, the Court in *Martinsville* again

found that the asserted harm to the school districts and their other students'

privacy were "speculative." *Id.* at 774. Finally, *Martinsville* found no abuse of

discretion in the District Courts' determinations that the public interest was served

by "protecting civil and constitutional rights," and that the public was not harmed

by the injunctions. *Id.*

As the following sections explain, *Whitaker* and *Martinsville* dictate

affirmance of the District Court's Decision and Order in this case, just as *Whitaker*

did in *Martinsville* less than three months ago.

**B.    The District Court Correctly Concluded that Appellee Is Likely
to Succeed on the Merits of Her Title IX and Equal Protection
Claims**

The District Court correctly determined that Appellee is likely to succeed on

the merits of her claims because, under *Whitaker* and *Martinsville*,  (1) a policy or

practice preventing a transgender student from using the bathroom that matches

the student's gender identity constitutes discrimination in violation of Title IX, and

(2) a school's claim that such a policy or practice is necessary to protect the privacy

of all students does not provide an "exceedingly persuasive" justification as required

under the Equal Protection Clause.

To demonstrate a likelihood of success on the merits, the moving party "need not show that it definitely will win the case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Rather, such a showing "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* Appellee made this showing before the District Court.

### 1. Appellee Demonstrated a Likelihood of Success on the Merits of Her Title IX Claim

Explicitly following *Whitaker*, and in accordance with the subsequently released *Martinsville* decision and the analysis of *Bostock* therein, the District Court correctly concluded that Jane Doe #1 was likely to succeed on the merits of her Title IX claim.[4]

The District Court accurately stated that under *Whitaker*, a "policy preventing a transgender student from using the bathroom that matches the student's gender identity is a form of discrimination on the basis of sex that violates Title IX." Short Appx. at A15. That is exactly what Appellants' policy and practice does. Appellants admitted as much during their May 15 School Board meeting by raising several options for Jane Doe #1's bathroom use, all of which involved her being treated differently from all other girls at Prairie View. Suppl. Appx. at A77-A78. They also subsequently announced a policy that would prevent Jane Doe #1 from using the girls' restroom through their May 23 policy email and their enactment of Policy 5514 on June 26. *See* Suppl. Appx. at A28, A74, A82-A83. As in

---

[4] The parties agree that MASD receives federal funds and is therefore a covered institution under Title IX. Short Appx. at A13. Appellants do not suggest otherwise in this Court.

*Whitaker* and *Martinsville*, there is no dispute that Appellee is a transgender girl diagnosed with gender dysphoria who has identified as and lived as a girl throughout her time at MASD. Suppl. Appx. at A31, A75-A77; *see also Martinsville*, 75 F.4th at 773. Accordingly, as the District Court found, Short Appx. at A15-A16, Appellants treated Appellee differently because she is transgender, and thus engaged in sex discrimination in violation of Title IX.

The District Court also accurately stated that under *Whitaker*, "providing a gender-neutral alternative does not cure the discrimination." *Id.* at A15. There is no dispute that Appellants instructed Appellee to use such an alternative. This case is thus "not factually distinguishable from *Whitaker* in a way that diminishes plaintiffs' likelihood of success," as the District Court found. *Id.* at A16.

Though the thrust of Appellants' argument about *Whitaker* and *Martinsville* is that they should be overturned, Appellants do assert that there are some distinctions between those cases and this one. None are meaningful.

Inexplicably, Appellants claim that they were denied in the District Court a chance to distinguish *Whitaker* and *Martinsville* as involving older students. Appellants' Br. at 16. But Appellants did make this argument below, and it was properly rejected. That is because nothing in the Seventh Circuit's Title IX (or Equal Protection) analysis under *Whitaker* turned on the age of the student or whether the school was a high school. Short Appx. at A16. That goes for each part of the analysis—likelihood of success, irreparable harm, balancing of interests, and public interest. Logic and the evidentiary record indicate no flaw in the District

Court's reasoning that "[p]resumably, girls in the fifth and sixth grades at MASD use the bathroom in the same manner as the high-school student in Whitaker: by entering a stall and closing the door." *Id.* In fact, one of the students in *Martinsville* was a seventh grader in middle school, just a year ahead of Appellee here. *Martinsville*, 75 F.4th at 764.

Appellants also point to the medical conditions of the students in *Whitaker* and *Martinsville* as supposed distinctions with this case. But similar to A.W. in *Whitaker*, 858 F.3d at 1039, the record shows that Appellee has been experiencing medical issues that make it especially important for her to have ensured bathroom access; she has gastrointestinal issues and has been told by her doctor that she should not delay using the bathroom. Short Appx. at A9-A10; Suppl. Appx. at A82. And regardless, the medical status of transgender students did not dictate this Court's prior decisions; instead, the Court in *Whitaker* and *Martinsville* focused its analysis on the standard for discrimination under Title IX and the Equal Protection Clause. *See Whitaker*, 858 F.3d at 1044-46; *Martinsville*, 75 F.4th at 774.

Going outside the evidentiary record, Appellants also contend that this case is different from *Whitaker* and *Martinsville* because students allegedly use the restrooms at Appellee's school to change clothes. Appellants' Br. at 1, 16. That extra-record contention is entitled to no consideration, *see* Fed. R. App. P. 10(a); *infra* at 42, and Appellants' statement that it is a "fact absent from *Whitaker* and *Martinsville*" is false in any event. Appellants' Br. at 17. The supposed distinction was evaluated and found immaterial in *Martinsville*, where the Court found no

clear error in the District Court's factual conclusion that locker rooms with stalls for changing are comparable to bathrooms with stalls and do not raise privacy concerns. 75 F.4th at 772.[5]

### 2. Appellee Demonstrated a Likelihood of Success on the Merits of Her Equal Protection Claim

Likewise, as the District Court found, Appellee demonstrated a likelihood of success on the merits of her claim under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause prohibits a state entity from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV. The Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To comport with the Equal Protection Clause, sex-based classifications must have an "exceedingly persuasive" justification, which requires the state to show that the classification at issue "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 524 (1996) (internal quotation omitted).

It is clear under *Whitaker* and *Martinsville* that requiring a transgender student to use restrooms that do not correspond to their gender identity is a sex-based classification subject to heightened scrutiny. *Whitaker*, 858 F.3d at 1051

---

[5] Though outside the record because the subject was not raised below, it is Appellee's understanding that if students change in the restrooms at Prairie View, they use the stalls.

("heightened review applies"); *Martinsville*, 75 F.4th at 772 ("Per *Whitaker*'s guidance, Martinsville's access policy relies on sex-based classifications and is therefore subject to heightened scrutiny."). The District Court understood this correctly. Short Appx. at A15 ("such a policy is subject to heightened scrutiny under the Equal Protection Clause"). Appellants acknowledge that, under *Whitaker* and *Martinsville*, heightened scrutiny applies. Appellants' Br. at 28-29.

Accordingly, Appellants needed to provide an exceedingly persuasive justification for blocking Appellee from using the girls' restroom. The District Court reviewed *Whitaker*'s analysis of the school's justification and summarized the Court's holding accurately: "a school district's unsubstantiated claim that the policy is necessary to protect the privacy of all students will not satisfy the school's burden to provide an 'exceedingly persuasive' justification for the policy." Short Appx. at A15. Because the privacy of other students was MASD's proffered justification, the District Court correctly found that *Whitaker* controlled and meant that Appellants did not have an adequate justification for its discrimination.

The District Court was right. As in *Whitaker* and *Martinsville*, MASD does not provide any justification grounded in the record, let alone an "exceedingly persuasive" one, for treating transgender students differently. The justification MASD continues to offer is that maintaining a policy that considers only biological sex and ignores gender identity is justified by the privacy concerns of other students. Appellants' Br. at 17, 28-30. Yet *Martinsville* holds that "[g]ender-affirming facility access does not implicate the interest in preventing bodily

exposure, because there is no such exposure." 75 F.4th at 773; *see also Whitaker*, 858 F.3d at 1052 ("A transgender student's presence in the restroom provides no more of a risk to other students' privacy rights than the presence of an overly curious student of the same biological sex who decides to sneak glances at his or her classmates performing their bodily functions. Or for that matter, any other student who uses the bathroom at the same time."). The supposed concern is a "phantom." *Martinsville*, 75 F.4th at 773.

Attempting to buttress this inadequate rationale for discriminating against Appellee, Appellants allege that they have received phone calls and emails from "District parents and community members" about Appellee using the girls' restroom. Appellants' Br. at 6. Those supposed communications may not be considered by this Court because they are not in the record. *See* Fed. R. App. P. 10(a); *infra* at 42. Even if they were, *Whitaker* instructs that they do constitute the exceedingly persuasive justification necessary under the Equal Protection Clause. In *Whitaker*, a teacher and some parents had voiced opposition to allowing a transgender student to use restrooms matching their gender identity. 858 F.3d at 1052. The Court did not find this justification sufficient. What mattered was that "neither party has offered any evidence or even alleged that the School District has received any complaints *from other students*." *Id.* Here, even if MASD's extra-record references to supposed parent and community member concerns were in the record, MASD does not point to any complaints *by students* regarding Appellee's bathroom

26

use. *See* 858 F.3d at 1052. Accordingly, Appellants have failed to demonstrate any justification, much less an exceedingly persuasive one, for its discriminatory policy.

Finally, the other distinctions between this case and *Whitaker* and *Martinsville* raised by Appellants and addressed above, i.e., age, are as immaterial to the Equal Protection claim as they are to the Title IX claim.

### 3.    There is No Basis for the Court to Overturn *Whitaker* and *Martinsville*

Recognizing the unambiguous precedent that is directly on point in this case, Appellants try to convince this Court to overturn *Whitaker* and *Martinsville*. Appellants' Br. at 17-30. These cases are, Appellants contend, "wrongly decided." *Id*. at 18. Yet they are carefully reasoned decisions of this Court, and it has not even been three months since *Martinsville* reaffirmed *Whitaker*. This makes it all the more essential for the Court to adhere to its statement that "principles of stare decisis require that we give considerable weight to prior decisions of this court unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling." *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006) (quoting *Haas v. Abrahamson*, 910 F.2d 384, 393 (7th Cir. 1990), *aff'd*, 553 U.S. 507 (2008) (internal quotation marks omitted). No such overruling or undermining of any aspect of *Whitaker* or *Martinsville* has occurred. To the contrary, as *Martinsville* explains, the Supreme Court's 2020 decision in *Bostock* "strengthens *Whitaker*'s conclusion" under Title IX. *Martinsville*, 75 F.4th at 769.

Appellants' primary argument against *Whitaker* and *Martinsville* is addressed to this Court's analysis of Title IX. Appellants assert that "sex" in Title IX refers only to "two distinct biological categories of individuals." Appellants' Br. at 20-24. In other words, that gender identity is irrelevant to any Title IX analysis. *Whitaker* and then *Martinsville*, post-*Bostock*, soundly reject that proposition. *Martinsville*, 75 F.4th at 769. Rightly so. As *Bostock* explicitly states, "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex," given that "transgender status [is] inextricably bound up with sex." 140 S. Ct. at 1741-42. It follows that failing to provide transgender students with "equal access to school programs" by denying equal restroom access violates Title IX. *Martinsville*, 75 F.4th at 769.

Appellants nonetheless proffer several reasons to overturn *Whitaker* and *Martinsville*, none of which have any merit.

Appellants' first reason is that the Eleventh Circuit disagreed with *Whitaker*. *See* Appellants' Br. at 18, 21. *Martinsville* rejected this argument. *See supra* at 19.

Appellants further assert that Congress must have meant "sex" in Title IX to mean biological sex only, because otherwise the term is "meaningless." Appellants' Br. at 20. They purport to buttress this assertion with two pages of quotations from five medical sources and a dictionary about the meaning of "sex" and "gender." *Id.* at 21-23. The upshot, Appellants claim, is that "the collective wisdom and guidance from the medical and scientific community" is that "sex" can only mean biological sex. *Id.* at 23. But Appellants offer no reason, and none is evident, why a handful of

28

cherrypicked quotes shed any light on what Congress meant by "sex" in Title IX. That term, as *Whitaker* explicitly recognized, is not defined in the statute (or its implementing regulations), 858 F.3d at 770, and certainly not by reference to Appellants' sources. Perhaps more fundamentally, Appellants' focus on the meaning of "sex" in isolation fails entirely to engage with this Court's focus on sex-*stereotyping* claims. Whitaker explains that the cognizability of such claims is why denying gender-affirming bathroom access to transgender students violates Title IX. *Whitaker*, 858 F.3d at 1047-50. Appellants miss the point.

Appellants also claim that *Whitaker* and *Martinsville* are in conflict with 20 U.S.C. § 1686 and 34 C.F.R. § 106.33, the provision in Title IX and its implementing regulation that permit certain facilities, including toilets, to be separated based on sex. *See* Appellants' Br. at 19-20. They assert that sex-segregated facilities can only exist if "sex" means biological sex exclusively. *See id.* at 20. But *Martinsville* rejected this interpretation, stating that "[n]arrow definitions of sex do not account for the complexity of the necessary inquiry." 75 F.4th at 770. This Court held instead that Section 1686 does not foreclose restroom use "based on gender identity" or require transgender students to use a restroom that is inconsistent with their gender identity. *Id.* Likewise, as *Martinsville* notes, *Whitaker* examined 34 C.F.R.§ 106.33 and concluded that it does not alter the fact that "bathroom-access policies that engaged in sex-stereotyping could violate Title IX." *Id.* (citing *Whitaker*, 858 F.3d at 1047). Just like the students in *Martinsville*, Appellee does not challenge the permissibility of sex-segregated restrooms under Section 1686, nor does she

seek to circumvent it. Instead, she simply seeks "equal access" to girls' restrooms, *id.* at 769, which she was denied by Appellants. Appellants' focus on Section 1686 and its implementing regulation misses the mark, as *Martinsville* explained, because the relevant question is not about sex-segregated restrooms. Rather, it is "who counts as a 'boy' for the boys' rooms, and who counts as a 'girl' for the girls' rooms." *Id.* at 770.

Appellants also argue that *Whitaker* and *Martinsville* must be overturned because the purpose of Title IX was to provide women with equal access to educational opportunities. Appellants' Br. at 26-27. Appellee appears to be excluded from "women" or "female students" in Appellants' view of the statute's purpose. Appellants' Br. at 3. Yet as *Whitaker* states, the term "biological" is absent from Title IX, and this Court reiterated in *Martinsville* that there is "insufficient evidence to support the assumption that sex can mean only biological sex." *Martinsville*, 75 F.4th at 770. Appellants do not, and cannot, point to any legislative history of Title IX suggesting that the statute was intended to exclude transgender students.

What the legislative history of Title IX does reveal is that the purpose of the statute was to address social inequality rather than to focus on biology or genitalia. *See, e.g., Discrimination Against Women: Hearings Before the H. Special Subcomm. on Educ. of the Comm. on Educ. and Labor on Section 805 of H.R. 16098*, 91st Cong. 298-308 (1970) ("1970 Hearings") (statement of Dr. Bernice Sandler, Women's Equity Action League) ("Half of the brightest people in our country . . . are women.

Yet these gifted women will find it very difficult to obtain the same kind of quality education that is so readily available to their brothers."). Legislators who played a key role in the enactment of Title IX confirm this focus on social equality. Representative Edith Green, who introduced the bill that ultimately became Title IX in the House of Representatives, testified that legislation was "necessary to insure equal rights, equal opportunities, and equal status for human beings of both sexes." 1970 Hearings at 269 (statement of Rep. Green). Similarly, the statement of Senator Bayh quoted by MASD addresses sex stereotyping and touts Title IX as a "first step in the effort to provide for the women of America . . . an equal chance to attend the schools of their choice." 118 Cong. Rec. 5808 (1972) (statement of Sen. Bayh). This focus does not suggest—and indeed would be inhibited by—a restrictive definition of "sex" that excludes transgender girls like Jane Doe #1 who face the exact sort of stereotyping and discrimination the statute was intended to stamp out.

Appellants also present two supposed consequences if *Whitaker* and *Martinsville* are not overturned. Neither is real. First, Appellants contend that the cases will undermine women's athletics. Appellants' Br. at 3-4, 24-25. Yet *Martinsville* states that "[w]e express no opinion on how Title IX or the Equal Protection Clause regulates other sex-segregated living facilities, educational programs, or sports teams," 75 F.4th at 773, and the District Court's preliminary injunction does not concern participation on gender-segregated sports teams. Athletics will be addressed on its own merits, not here. Second, Appellants contend that any boy who wants to use the girls' restroom will be entitled to do so.

Appellants' Br. at 2, 25-26. But this Court has already limited its rulings to prohibiting schools from denying access to students who "genuinely need[]" it because of their gender identities. *Martinsville*, 75 F.4th at 773.

Like the school districts in *Martinsville*, Appellants identify no valid basis for overturning *Whitaker* and *Martinsville*. These cases are controlling and leave no doubt that Appellee established a strong likelihood of success on her claims under Title IX and the Equal Protection Clause.

### C.     The District Court Properly Concluded that Appellee Would Sustain Irreparable Harm in the Absence of a Preliminary Injunction

The evidentiary record shows that MASD's decision to prohibit Appellee from using the girls' restroom caused her immense harm, and the District Court reasonably determined that she would experience irreparable harm in the absence of an injunction. "Irreparable harm occurs when the 'legal remedies available to the movant are inadequate.'" *Martinsville*, 75 F.4th at 774 (quoting *DM Trans LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022); *see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1089 (7th Cir. 2008).

### 1.     Appellee Demonstrated that She Experienced Immense Harm Due to MASD's Policy and that She Would Experience Irreparable Harm without an Injunction

Appellee showed the District Court that she would experience irreparable harm if an injunction were denied due to the severe discrimination she was subject to under MASD's bathroom policy. In *Whitaker,* this Court explained that a school district prohibiting a student from using the bathroom that corresponds to their gender identity can "significantly and negatively impact[] [their] mental health and

32

overall well-being." 858 F.3d at 1045 (quotation omitted). In fact, a school district that requires a transgender student to use a separate bathroom to which only they have access will "further stigmatize[]" that student. *Id.* Similarly in *Martinsville*, the Court found that the students were likely to suffer irreparable harm, and emphasized that a district court's finding on irreparable harm is subject only to clear error review. 75 F.4th at 774.

Appellee was likely to experience irreparable harm just like the students in *Whitaker* and *Martinsville*. As the District Court explained, Appellee's mother, Jane Doe #2, submitted a declaration explaining the effect of Appellants' policy on her daughter. When Appellants' policy was being enforced, Appellee was "extremely distressed" and "upset," expressed that she was having "thoughts of self-harm," and asked "Why am I even alive?" Suppl. Appx. at A81, A84. Appellee also provided documentation of emails to her mother while she was in school, expressing distress and anxiety about school administrators disciplining her for her bathroom usage. *Id.* at A49. Jane Doe #2 also explained that Appellee has gastrointestinal issues that could be exacerbated if she tries to refrain from using the bathroom due to MASD's policy. *Id.* at A82.

As the District Court held, Appellee thus demonstrated that she was likely to suffer "physical, psychological, and educational harms" in the absence of an injunction, all of which are generally recognized to be irreparable harms. Short Appx. at A18 (citing *Int'l Assoc. of Firefights, Local 365 v. City of East Chicago*, 56

F.4th 437, 452 (7th Cir. 2022); *Whitaker*, 858 F.3d at 1045-46; *Washington v. Ind. High Sch. Athletic Ass'n., Inc.*, 181 F.3d 840, 853 (7th Cir. 1999)).

> 2. **MASD's Alleged Policy Exceptions and Special Education Referral Are Immaterial to the Harm Inflicted on Appellee Absent a Preliminary Injunction**

Appellants point to two non-sequiturs to distract from the irreparable harm caused by their own discriminatory policy. First, Appellants contend that Appellee faced no irreparable harm because they purportedly allow for a student or parent to seek an exception, which will be considered on a "case-by-case basis." Appellants' Br. at 9. Second, Appellants cite a "special education and/or Section 504 referral"—initiated the same week the May 23 email went out—and suggest that this referral could provide for the restoration of Appellee's constitutional and statutory rights. *Id.* at 7. But, as the District Court found, neither of these processes could ameliorate or even diminish the irreparable harm that Appellee was subject to because they did not, and would not, give her access to the girls' bathroom. Short Appx. at A19.

The District Court correctly found that the alternatives suggested by Appellants would not "result in the district's making a true 'exception' to the policy that would allow plaintiff to use the girls' bathroom." *Id.* Appellants had already received confirmation of Appellee's gender dysphoria diagnosis from her doctor, Suppl. Appx. at A79, and had known she was transgender since third grade. This was all the information they needed to know that, under *Whitaker*, Appellee was entitled to use the girls' bathroom. Nevertheless, as the District Court found, "[t]he only potential accommodations that [Appellants] describe are access to a 'trusted

adult,' the option to use the boys' restroom or a gender-neutral restroom, providing a map of the building to enable [Appellee] to find the location of restrooms . . . and evaluating plaintiff for special-education services." Short Appx. at A19. The conspicuous absence of "access to the girl's bathroom" led the District Court to the obvious conclusion that a true exception is not available under Appellants' policy. Nothing indicates that factual determination was clearly erroneous.

The hypothetical possibility of an undefined "exception" would not reduce the irreparable harm inflicted on Appellee in any event. Even if—contrary to Appellants' representations to the District Court, the content of their brief, and the explicit language of Policy 5514—Appellee's access to the girls' bathroom could have been restored, that faint possibility does not lessen the irreparable harm she would currently be suffering absent an injunction. Such an exception would be available only after consultation with no fewer than five MASD employees and Appellants' taking "into consideration the safety and privacy of all students." Suppl. Appx. at A74. In the meantime, Appellee would continue to suffer from substantial distress and thoughts of self-harm while MASD's policy was being enforced against her, *see supra* at 9, 25. As the District Court correctly understood, "[i]t is the district's policy of illegal discrimination that is the source of [Appellee's] irreparable harm, and no amount of 'accommodation' could remedy the harmful psychological effects of that discrimination." Short Appx. at A19.

Notably, Title IX does not contain any administrative exhaustion requirement, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 247 (2009), nor

does the Equal Protection Clause have such a requirement. Accordingly, Appellee was not required to seek any "exception" to the policy, or to submit to a referral process for students with disabilities. Instead, she had the right to use the girls' restroom under Title IX, and validly brought suit when her right was violated.

Further, there is a presumption of irreparable harm where a plaintiff's constitutional or civil rights have been violated. *See Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (certain constitutional rights are "intangible and unquantifiable interests" that "cannot be compensated by damages"); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ("where a defendant has violated a civil rights statute, . . . irreparable injury [may be presumed] from the fact of the defendant's violation"). Therefore, Appellants' discriminatory treatment of Appellee causes irreparable harm even if they eventually decided no longer to discriminate.

The "special education and/or Section 504 referral" process Appellants point to is likewise inapposite to the question of irreparable harm. Even if MASD's referral were germane to Appellee's claims—which it is not—the fact that MASD tried to use this referral to circumvent Appellee's civil rights strengthens her claims. Federal statutes mandate that schools provide necessary supports to students with disabilities through special education plans (commonly known as "individualized education programs," or "IEPs") and Section 504 plans (commonly known as "504 plans"). *See generally* Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401 *et seq.*; Section 504 of the Rehabilitation Act of 1973, as

amended, 29 U.S.C. § 794. Schools are required to implement IEPs and 504 plans to ensure that children with disabilities are afforded their right to a "free appropriate public education," or a "FAPE." 20 U.S.C. § 1412(a)(1); 45 C.F.R. § 84.33. A FAPE includes both "special education" and "related services." 20 U.S.C. § 1401(9). "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability," while "related services" are those "required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26), (29).

Section 504 and its implementing regulations provide that "[n]o qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives Federal financial assistance." 34 C.F.R. § 104.4(a).  A "qualified handicapped person" in the educational context is a school aged student who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment. 34 C.F.R. § 104.3(j), (l).

The evaluation and implementation process to become eligible for and receive special education plans is lengthy. Information provided by the Wisconsin Department of Public Instruction states that schools may take 60 days to determine whether a child is eligible for services—which involves a multi-step evaluation of the child and her needs—and then 30 additional days to develop an IEP. *See* Model Local Educ. Agency Special Educ. Policies and Procedures, Wis. Dep't of Pub.

Instruction (Jul. 2022), https://dpi.wi.gov/sites/default/files/imce/sped/pdf/policy-model.pdf.

The very text of Section 504 makes clear that these federally mandated student supports are meant to ensure that students with disabilities are not "excluded from the participation in, [] denied the benefits of, or [] subjected to discrimination under" school programming. 29 U.S.C. § 794(a). Far from serving as gatekeeper to basic rights to which a student is entitled, the special education process is intended to help students with disabilities overcome barriers that would otherwise prevent them from accessing a free appropriate public education. In attempting to use the special education and Section 504 referral process to circumvent Appellee's civil rights, MASD thus contravened the very purpose of these laws. IEPs and 504 plans are intended to ensure that children with disabilities are not denied the benefits of an equal education. 29 U.S.C. § 794(a). Appellants' attempted use of these laws to, instead, erect obstacles to Appellee's exercise of her rights under Title IX and the Equal Protection Clause is odious.

Moreover, the evaluation process for IEPs and 504 plans is extensive and can take three months or longer. The school district's framework requires a transgender student to "qualify" as a person with a disability to even have a chance at obtaining any sort of heightened services—not to mention undergoing weeks if not months of testing. And Appellants provide no evidence that Appellee would have been able to use the girls' restroom while that process took place, or that the process would have

38

resulted in allowing Appellee to use the girls' restroom as she had for nearly three years without incident.

### D.     The District Court Correctly Found that the Balance of Harms and Public Interest Weighed Strongly in Favor of Appellee

Finally, the District Court correctly determined that both the balance of the equities and the public interest strongly weighed in favor of granting the injunction.[6] When assessing a motion for preliminary injunction, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008) (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). This analysis includes considering the equities "for the public as a whole." *Whitaker*, 858 F.3d at 1054. The Court of Appeals considers the District Court's analysis of the balance of equities for abuse of discretion. *Doe v. University of Southern Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). It is well established that upholding constitutional rights serves the public interest. *See Joelner v. Vill. of Washington Park,* 378 F.3d 613, 620 (7th Cir. 2004); *see also Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003).

---

[6] This Court uses a "sliding scale" approach to preliminary injunctions; that is, "'the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa.'" *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 n.4 (7th Cir. 2022) (quoting *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020)). Given that Appellee is overwhelmingly likely to succeed on the merits of her claim in light of Seventh Circuit precedent, *see supra* at 20-32, the less the balance of the equities need to weigh in her favor. But regardless, as the District Court found and as this Section explains, the balance of equities weighs strongly in Appellee's favor.

Here, the District Court correctly found that the balance of harms and public interest weighed strongly in favor of Appellee. Appellee experienced substantial distress and thoughts of self-harm while MASD's policy was being enforced against her, *see supra* at 9, 25, and she would likely continue to experience both absent the injunction.

Appellants will not suffer harm from complying with Title IX and the Constitution. As the District Court explained, *Whitaker* found that the school district and the public were not harmed by allowing a transgender student to use gender-affirming restrooms. He had done so for six months prior without an issue, and the school did not present evidence indicating that any other student's privacy would be compromised. Short Appx. at A20 (citing *Whitaker*, 858 F.3d at 1054). The concern articulated by the school district was "speculative." So, too, in *Martinsville*. 75 F.4th at 774 (transgender students' presence in a gender-affirming bathroom did not affect other students' privacy interests).

Likewise here, Appellee used the girls' restroom for nearly three years without any negative effect on other students' privacy, Suppl. Appx. at A77, and Appellant offered nothing but speculation about such harm. Short Appx. at A20. Given that Appellee had been using the girls' restroom for several years without an issue prior to MASD's decision to enact a policy barring her from doing so, the preliminary injunction merely restored the conditions that had existed for years without harm. *See* Short Appx. at A21-A22.

Appellants do not appear to challenge the District Court's conclusions about the balancing of harms and the public interest based on the record before it. Rather, Appellants rely on extra-record allegations—that some parents purportedly withdrew their children from summer school after the District Court granted the preliminary injunction, *see* Appellants' Br. at 1, 27—which should not be considered. *See* Fed. R. App. P. 10(a); *infra* at 42. Even if this could be considered, it has no bearing on this appeal because it concerns alleged conduct that occurred after the District Court issued the preliminary injunction at issue.

It would also be immaterial. As the Court reasoned in *Whitaker*, where no "students have ever complained" about a transgender student's use of a bathroom, a school district's claims about alleged privacy concerns are "all speculative." 858 F.3d at 1054. Just like the district in *Whitaker*, MASD provides no indication in or outside the record that *students* have complained about Appellee's bathroom use, and the district's supposed privacy concerns are likewise speculative.

Appellants' professed concerns about the risk to students' privacy rights suggest a discriminatory distrust of transgender students. That is at odds with this Court's recognition that a transgender student's presence in a restroom with stalls does not put students' privacy rights at risk more than any other student's presence. *See Whitaker*, 858 F.3d at 1052. MASD nonetheless appears to be suggesting that transgender students are more likely than others to violate the privacy rights of their fellow students. That biased view is not pertinent to the balancing of harms.

The only substantiated harm in the record is the harm to Appellee absent an injunction, and the public interest is served by protecting her constitutional and statutory rights. The District Court therefore properly found that this factor favored issuance of a preliminary injunction.

### E.    Appellants' Extra-Record Factual Assertions May Not Be Considered

As indicated above, Appellants' brief contains a host of contentions and factual allegations that are not contained in the evidentiary record at the District Court. These extra-record allegations may not be considered by this Court.

Under Federal Rule of Appellate Procedure 10(a), the record on appeal consists solely of "(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk." Fed. R. App. P. 10(a). As this Court has stated, "[t]he parties may rely on appeal only on materials furnished to the district judge." *Henn v. Nat'l Geographic Soc.*, 819 F.2d 824, 831 (7th Cir. 1987). "Evidence that was not proffered to the district court in accordance with its local rules is not part of the appellate record; it has no place in an appellate brief." *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 795 (7th Cir. 1997). The vast majority of the Factual Background in Appellants' Brief—as well as factual allegations made throughout the brief that appear nowhere in the record—were not offered into the record before the District Court, and accordingly should not be considered on appeal.

Moreover, as explained above, Appellants' extra-record factual allegations would not make any difference even if they were substantiated and Appellants had provided related evidence to the District Court.

## II.   The District Court Provided Appellants with Ample Opportunity to Enter Evidence Into the Record

Appellants' procedural argument also fails. They contend that the District Court's findings of fact should be deemed erroneous because it did not allow them to submit evidence or hold an evidentiary hearing. Appellants' premise is wrong. Both sides had an opportunity to submit evidence and Appellants chose not to. Appellants instead argued to the District Court on the basis of the evidence that Appellee submitted, which they did not dispute, and other materials that they referenced without submitting. The District Court carefully weighed the evidence in the record, as demonstrated by the Decision and Order granting the preliminary injunction. *See* Short Appx. at A4-A23. It was not required to hold an evidentiary hearing and Appellants never asked it to hold one.

Appellants had the opportunity to present evidence in this case, and their choice to largely not do so does not invalidate the preliminary injunction. Under Federal Rule of Civil Procedure 65(a)(1), the adverse party must be provided with notice before a preliminary injunction issues, and what constitutes sufficient notice is a question "primarily to the district court's discretion." *People of State of Ill. ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989). "Rule 65 expressly requires only notice, not service of process." *Fellowes, Inc. v. Changzhou Xinrui Fellowes Off. Equip. Co.*, No. 11 C 6289, 2012 WL 3544841, at *3 (N.D. Ill. Aug. 16,

43

2012), *vacated on other grounds*, 759 F.3d 787 (7th Cir. 2014). Appellants were given notice.

A district court also has discretion to determine whether to hold an evidentiary hearing on a preliminary injunction, and may decline to do so where— as here— "the evidence already in the district court's possession enabled it to conclude that the plaintiff had a reasonable likelihood of success." *Syntex Ophthalmics, Inc. v. Tsuetaki*, 701 F.2d 677, 682 (7th Cir. 1983); *see also Socialist Workers Party v. Ill. State Bd. Of Elections*, 566 F.2d 586, 587 (7th Cir. 1977) (upholding a permanent injunction where "[n]o purpose would have been served by holding an evidentiary hearing in this case" because "[t]here was no factual dispute").

### A. Appellants Had Clear Notice Prior to the Preliminary Injunction

Here, there was sufficient notice for the District Court to issue the preliminary injunction. As Appellants concede, though they had not yet been formally served with the Complaint when the Court issued the preliminary injunction, they received a courtesy copy of the Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction the day they were filed. *See* Appellants' Br. at 14. Appellants thus had notice of the Complaint and the Motion, such that the District Court could then issue the preliminary relief eleven days later. *See Hartigan*, 871 F.2d at 1340.

## B.     Appellants Had the Opportunity to Submit Record Evidence Prior to Issuance of the Preliminary Injunction

Appellants did have the opportunity to submit evidence into the record. In fact, they availed themselves of the opportunity to file a brief in opposition to Appellee's Motion.[7] Suppl. Appx. at A87-A101 (Defendants' Response to Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction). MASD chose not to submit any declarations or other exhibits with that brief, and therefore chose not to put any evidence into the record; as the District Court stated, the "district did not submit its own declarations and relies on many of the same exhibits that plaintiff included with her own motion." Short Appx. at A12. MASD's opposition brief included a five-page "Factual Background" section, including excerpted emails not already in the evidentiary record, but chose not to actually submit those emails as evidence. *See* Suppl. Appx. at A88-A93. Clearly, MASD did have the opportunity to enter evidence into the record before the District Court.

That Appellants did "not submit[] evidence contradicting the experience of other schools as reflected in *Whitaker*," as the District Court stated, Short Appx. at A21, reflects MASD's choice not to do so. It does not suggest any misconduct by the District Court. What it reveals is that Appellants are attempting to use their own decision below not to submit evidence to manufacture a rationale for overturning the District Court's preliminary injunction. Appellants then try to have it both ways

---

[7] The District Court did not order Appellants to submit their opposition on any particular timeline. After submitting it, Appellants made no further attempts either to submit additional evidence for the record or to ask the District Court for more time to do so.

by improperly asking this Court to consider their extra-record statements of alleged facts. Appellants' Br. at 16. *See supra* at 42.

In addition, Appellants' assertion that the District Court did not rely on any evidence is demonstrably false. *See* Appellants' Br. at 15 ("she merely alleged facts in her Complaint and presented legal arguments"); *id.* at 16 ("without having received evidence on the issues"). As the record makes plain, Appellee submitted evidence and the District Court relied on it.

### C.    The District Court Was Not Required to Hold an Evidentiary Hearing

Further, Appellants had ample opportunity to request a hearing on the motion for preliminary injunction, and chose not to do so. The District Court issued the Temporary Restraining Order on July 6, 2023, and did not issue the Preliminary Injunction until July 11, 2023. *See* ECF Nos. 14, 15. At no point did Appellants request an evidentiary hearing before the District Court.

Even if they had, the District Court had discretion not to hold a hearing given that the dispositive evidence in this case was not in dispute. For instance, the school district in one of the cases consolidated in *Martinsville* requested a hearing on the students' motion for a preliminary injunction. Defendants' Motion for Oral Argument on Plaintiffs' Motion For Preliminary Injunction And Request For Opportunity to Supplement Record, *B.E. and S.E. et al v. Vigo Cnty. Sch. Coop. et al*, 2:21-cv-00415 (S.D. Ind. Feb. 11, 2022), ECF No. 46. The District Court exercised its discretion not to hold a hearing, stating "the [p]arties' positions are well represented by their briefs," Order on Motion for Oral Argument and to Supplement

Record, *id.* at ECF No. 48, and this Court later affirmed the District Court's grant of the preliminary injunction. *Martinsville*, 858 F.3d at 1055*; see also Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002), *as amended* (Oct. 18, 2002) (a district court need not hold a hearing before ruling on a motion for preliminary injunction where the nonmoving party does not raise genuine issues of material fact). Accordingly, the District Court was not required to hold an evidentiary hearing. Indeed, it is hard to imagine a scenario where an evidentiary hearing was less necessary; this Court had twice spoken to the precise issue, and the documentary evidence in the record established that this case was on all fours with that precedent.

## CONCLUSION

Much like *Martinsville*, in Judge Easterbrook's words, "this is an easy case for the plaintiff[]." *Martinsville*, 75 F. 4th at 775 (Easterbrook, J., concurring). Prior to Appellants' actions during spring and summer 2023, Jane Doe #1 had used the girls' restroom at Prairie View, just like the other girls in her classes, for three years without any problems arising. Appellants' sudden decision to prevent her from continuing to use the girls' restroom harmed Appellee by violating her rights under Title IX and the Equal Protection Clause. She experienced bullying and harassment, distress, anxiety, and thoughts of self-harm as a result.

Appellee demonstrated that she is likely to succeed on the merits of her Title IX and Equal Protection Clause claims, that she would suffer further irreparable harm in the absence of a preliminary injunction, and that the balance of the

equities and public interest weighed strongly in her favor. Following the Seventh Circuit's directly on point decision in *Whitaker*, subsequently reaffirmed in *Martinsville*, the District Court issued a tailored injunction to ensure that Appellee may continue to use the girls' restroom at school. Accordingly, Appellee respectfully submits that this Court should affirm the District Court's Decision and Order granting the preliminary injunction.

Respectfully submitted, this 19th day of October, 2023,

/s/ Glenn Schlactus
Glenn Schlactus (counsel of record)
Gemma Donofrio
Emily Curran
Nicholas Abbott
RELMAN COLFAX PLLC
1225 19th Street, NW, Suite 600
Washington, DC 20036
Phone: (202) 728-1888
Fax: (202) 728-0848
gschlactus@relmanlaw.com
gdonofrio@relmanlaw.com
ecurran@relmanlaw.com
nabbott@relmanlaw.com

Victoria Davis Dávila
Robert Theine Pledl
DAVIS & PLEDL S.C.
1661 N. Water Street, Suite 410
Milwaukee, WI 53202
Phone: (414) 667-0390
Fax: (877) 847-1278
vldd@davisandpledl.com
rtp@davisandpledl.com

*Attorneys for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Seventh Circuit Rule 32. This brief contains 12,626 words in compliance with this Circuit's 14,000-word limit on principal briefs set in Circuit Rule 32(b). I further certify that this brief complies with the typeface and type style requirements of Rule 32(a)(5)-(6) of the Federal Rules of Appellate Procedure and Seventh Circuit Rule 32(a)-(b). This brief has been prepared in proportionally spaced typeface using Microsoft Word 2013 in 12-point Century Schoolbook for the main text and 11-point Century Schoolbook for the footnotes.

<u>/s/ Glenn Schlactus</u>
Glenn Schlactus

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2023, I electronically filed the foregoing Brief of Plaintiff-Appellee with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/ Glenn Schlactus
Glenn Schlactus