# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

D.P., a minor, by her mother and next friend, A.B.,[1]

      Plaintiff-Appellee,

         v.

MUKWONAGO AREA SCHOOL DISTRICT and JOSEPH KOCH,

      Defendants-Appellants.

Appeal from the United States District Court for the Eastern District of Wisconsin
Case No. 2:23-CV-876
The Honorable Judge Lynn Adelman

## BRIEF OF DEFENDANTS-APPELLANTS, MUKWONAGO AREA SCHOOL DISTRICT AND JOSEPH KOCH PURSUANT TO THE COURT'S JUNE 30, 2025, ORDER

Joel S. Aziere (*counsel of record*)
Hunter M. Cone
**Buelow Vetter Buikema**
**Olson & Vliet, LLC**
20855 Watertown Road, Suite 200
Waukesha, WI 53186Phone: (262) 364-0300
Facsimile: (262) 364-0320

*Attorneys for Defendants-Appellants*

## *ORAL ARGUMENT REQUESTED*

---

[1] The parties previously referred to the plaintiffs as Jane Doe #1 and #2. In accordance with Fed. R. Civ. Pro. 5.2(a)(3), in its original June 12, 2025, decision and order, this Court used initials to refer to the minor plaintiff and the mother who brought suit on the minor plaintiff's behalf. In this brief, Defendants will do the same.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 3

I. *WHITAKER* AND *MARTINSVILLE* ARE LEGALLY UNTENABLE IN LIGHT OF *SKRMETTI* AND MUST BE OVERRULED. ........................................................................................... 3

    A. *Skrmetti* Makes Clear This Court Erred In *Whitaker* and *Martinsville* When It Treated Transgender Individuals As Members Of A Suspect Class. ................................................. 3

    B. This Court's Reliance On *Bostick* In Deciding *Martinsville* Is Rebuked By *Skrmetti* ........ 4

    C. *Skrmetti* Makes It Clear In *Whitaker* and *Martinsville* This Court Applied The Wrong Test To Ascertain Whether The Policy At Issue Ran Afoul Of The Equal Protection Clause And Title IX. ............................................................................................................. 5

    D. In *Whitaker* and *Martinsville*, This Court Erred In Finding Gender Identity Discrimination To Be A Form Of Sex Discrimination Prohibited By Title IX. ................. 9

II. THE DISTRICT'S BATHROOM USE POLICY IS VALID UNDER THE EQUAL PROTECTION CLAUSE AND TITLE IX. ............................................................................................................. 12

    A. The District's Sex-Segregated Bathroom/Locker Room Use Policy Is Valid Under the Equal Protection Clause. ....................................................................................................... 12

    B. The District's Bathroom Use Policy Is Valid Under Title IX. ......................................... 15

CONCLUSION ................................................................................................................. 20

CERTIFICATE OF COMPLIANCE ................................................................................. 22

CERTIFICATE OF SERVICE .......................................................................................... 23

**Cases**

*A.C. v. Metropolitan School District of Martinsville,* 75 F.4th 760 (7th Cir. 2023).............. *passim*

*Adams v. School Board of St. John's County*, 57 F.4th 791 (11ᵗʰ Cir. 2022) .........................14, 20

*Alabama v. U.S. Sec'y of Educ.*,
    No. 24-12444, 2024 WL 3981994 (11th Cir. Aug. 22, 2024) ....................................10, 11

*Arkansas v. U.S. D.O.E.*, 742 F. Supp. 3d 919 (E.D. Mo. July 24, 2024) ....................................10

*Bostock v. Clayton County,* 590 U. S. 644 (2020) ................................................................. *passim*

*Brannum v. Overton Cty. Sch. Bd.*, 516 F.3d 489 (6th Cir. 2008)................................................15

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)........................................................................19

*Carroll Indep. Sch. Dist. v. U.S. D.O.E.*,
    741 F. Supp. 3d 515 (N.D. Tex. July 11, 2024)................................................................10

*Cassell v. Snyders*, 990 F.3d 539 (7th Cir. 2021) ........................................................................11

*Dep't of Educ. v. Louisiana*, 603 U.S. 866, 144 S. Ct. 2507 (2024)....................................*passim*

*Doe v. Luzerne Cty.*, 660 F.3d 169 (3d Cir. 2011)........................................................................15

*FCC v. Beach Communications, Inc.*,
    508 U. S. 307, 113 S. Ct. 2096, 124 L. Ed. 2d 211) ........................................................14

*Frontiero v. Richardson*, 411 U.S. 677 (1973) ............................................................................20

*J.A. v. Fort Wayne Cmty. Schs.*,
    No. 1:12 CV 155 JVB, 2013 WL 4479229 (N.D. Ind. Aug. 20, 2013) .............................15

*J.D.B. v. North Carolina*, 564 U.S. 261 (2011) ...........................................................................15

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) .........................................................5

*Kansas v. U.S. D.O.E.,* 739 F. Supp. 3d 902 (D. Kan. July 2, 2024)...........................................10

*Lee v. Downs*, 641 F.2d 1117 (4th Cir. 1981)...............................................................................15

*Louisiana v. U.S. D.O.E.*, 737 F. Supp. 3d 377 (W.D. La. June 13, 2024) ...................................9

*Neal v. Bd. of Trustees of Cal. State Univs.*, 198 F.3d 763 (9th Cir. 1999)....................................18

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ....................................12

*Oklahoma v. Cardona,* 743 F. Supp. 3d 1314 (W.D. Okla. July 31, 2024)...............................10

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (plurality op.)...............................20

*Quilici v. Vill. Of Morton Grove*, 695 F.2d 261 (7th Cir. 1982)....................................14

*Sepulveda v. Ramirez*, 967 F.2d 1413 (9th Cir. 1992)....................................15

*Tennessee v. Cardona*, 737 F. Supp. 3d 510 (E.D. Ky. June 17, 2024) ........................9

*Tennessee v. Cardona*, 762 F. Supp. 3d 615 (E.D. Ky. Jan. 9, 2025) ........................10

*Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024) .....................10

*Texas v. United States,* 740 F. Supp. 3d 537 (N.D. Tex. July 11, 2024) ....................................10

*Tuan Anh Nguyen v. INS*, 533 U. S. 53, 121 S. Ct. 2053, 150 L. Ed. 2d 115 (2001) ...................13

*United States Department of Education v. Louisiana*, No. 24A79 (filed July 22, 2024) .............10

*United States v. Skrmetti,* 145 S. Ct. 1816, 222 L. Ed. 2d 136, 2025 BL 211307 (2025) ..... *passim*

*United States v. Virginia*, 518 U. S. 515, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996) .................12

*Whitaker v. Kenosha Unified School District No. 1 Board of Education,*
   858 F.3d 1034 (7th Cir. 2017) ................................................................ *passim*

**Constitutional Provisions and Federal Statutes**

20 U.S.C. § 1681 (*Title IX of the Education Amendments of 1972*)....................................*passim*

20 U.S.C. § 1686........................................................................................*passim*

42 U.S.C. § 2000e-2 (*Title VII of the Civil Rights Act of 1964*) ...........................................*passim*

U.S. Const. amend. XIV, § 1 *(Equal Protection Clause)*. ....................................*passim*

**Federal Rules and Regulations**

34 C.F.R. § 106.10 ........................................................................................*passim*

34 C.F.R. 106.33 ..........................................................................................*passim*

89 Fed. Reg. at 33802 ............................................................................................................9

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33474 (April 29, 2024)..................................................9

## INTRODUCTION

On June 30, 2025, following the release of *United States v. Skrmetti,* 145 S. Ct. 1816, 222 L. Ed. 2d 136 (2025), this Honorable Court *sua sponte* vacated its June 12, 2025, decision and directed the parties to brief "whether the court should overrule *Whitaker v. Kenosha Unified School District No. 1 Board of Education,* 858 F.3d 1034 (7th Cir. 2017), and *A.C. v. Metropolitan School District of Martinsville,* 75 F.4th 760 (7th Cir. 2023), in light of *Skrmetti*." [Dkt. #60]. The parties were also "invited to address whether, if the court overrules *Whitaker* and *Martinsville,* the challenged policy is valid under (1) the Equal Protection Clause in light of *Skrmetti*; and (2) Title IX in light of 20 U.S.C. § 1686, 34 C.F.R. § 106.33, and *Skrmetti*." [Dkt. #60].

*Skrmetti* makes clear this Court's decisions in *Whitaker* and *Martinsville* are flawed, untenable, and must be overturned. *Skrmetti* equally makes clear the challenged policy is valid under the Equal Protection Clause and Title IX.

First, in *Whitaker* and *Martinsville,* this Court effectively treated transgender status as a suspect class. However, *Skrmetti* makes clear the Supreme Court never intended transgender status to be a suspect or quasi-suspect class. Second, the *Martinsville* decision was heavily reliant on the Supreme Court's ruling in *Bostock v. Clayton County,* 590 U. S. 644 (2020). However, *Skrmetti* makes clear the Supreme Court never intended *Bostick* to be applied outside the Title VII setting.

Third, in *Whitaker* and *Martinsville,* this Court applied the wrong test to ascertain whether the policy at issue ran afoul of the Equal Protection Clause and Title IX. In both cases, this Court questioned whether the policy at issue treated a transgender boy differently than it treated a biological boy. However, *Skrmetti* makes clear the appropriate test is whether the policy at issue treats a biological boy differently than a biological girl. In this case, the answer to that question is

"no"; which means the District's bathroom/locker room policy does not run afoul of the Equal Protection Clause or Title IX.

Finally, in *Whitaker* and *Martinsville*, this Court took the position the definition of "sex" was not expressly contained in Title IX and, as such, the Court was unable to ascertain whether "sex" only means biological sex or includes gender identity. That issue was soundly addressed by the Supreme Court in *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 867 (2024), in which "all Members of the Court [ ] accept[ed] that the plaintiffs were entitled to preliminary injunctive relief as to … the central provision [34 C.F.R. § 106.10] that newly defines sex discrimination to include discrimination on the basis of sexual orientation and gender identity." *Id.* (Sotomayor, dissenting). There can be no further confusion regarding the definitions of "sex" or "sex discrimination" in Title IX. "Sex" in Title IX means biological sex and it does not include gender identity. "Sex discrimination" in Title IX means discrimination based on biological sex and does not include discrimination based on gender identity.

*Skrmetti* has provided this Honorable Court the guidance necessary to overturn *Whitaker* and *Martinsville*. Coupled with the Supreme Court's ruling in *Dep't of Educ. v. Louisiana*, *Skrmetti* provides the framework upon which this Honorable Court may find the policy at issue compliant with both the Equal Protection Clause and Title IX. As such, the District respectfully requests the Court take the following actions: (1) overrule *Whitaker* and *Martinsville* in light of *Skrmetti;* (2) reverse the July 11, 2023, Order of U.S. District Court for the Eastern District of Wisconsin; (3) hold District Policy 5514 (the "District's Bathroom Use Policy") to be valid under both the Equal Protection Clause and Title IX; and (4) remand the case to the District Court for dismissal consistent with this ruling.

## ARGUMENT

I. *WHITAKER* AND *MARTINSVILLE* ARE LEGALLY UNTENABLE IN LIGHT OF *SKRMETTI* AND MUST BE OVERRULED.

*Whitaker v. Kenosha Unified School District No. 1 Board of Education,* 858 F.3d 1034 (7th Cir. 2017), and *A.C. v. Metropolitan School District of Martinsville,* 75 F.4th 760 (7th Cir. 2023) rest on flawed legal premises and are no longer tenable in light of the Supreme Court's decision in *Skrmetti.* This Court should overrule both decisions.[2]

### A. *Skrmetti* Makes Clear This Court Erred In *Whitaker* and *Martinsville* When It Treated Transgender Individuals As Members Of A Suspect Class.[3]

As the *Martinsville* Court explained, both *Whitaker* and *Martinsville* effectively treated transgender individuals as members of a suspect class:

> The crucial question for the Title IX theory in both of the cases now before us, just as in *Whitaker*, is one of law: how does one interpret Title IX's prohibition against discrimination "on the basis of sex" as applied to transgender people? In *Whitaker* we answered that discrimination against transgender students is a form of sex discrimination. Our answer to that legal question did not depend on the plaintiff's evidentiary showing, and that answer does not change with a more rigorous threshold for success on the merits.

*Martinsville,* 75 F.4th at 769. The Court went on to state, "[a]pplying *Bostock*'s reasoning to Title IX, we have no trouble concluding that discrimination against transgender persons is sex discrimination for Title IX purposes, just as it is for Title VII purposes." *Id.* Finally, the Court

---

[2] Throughout its decision in *Martinsville*, this Court referred to the rationale it applied in *Whitaker*, adopted that rationale, and applied it to the *Martinsville* case. In addressing the basis for overruling *Whitaker* and *Martinsville*, this brief will primarily cite to the *Martinsville* decision only, into which was incorporated the underlying rationale for the *Whitaker* decision.

[3] The *Whitaker* court attempted to duck the issue of whether transgender status is a suspect class: "this case does not require us to reach the question of whether transgender status is per se entitled to heightened scrutiny." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017). However, as explained in this Section I(A), while not specifically holding transgender status to be a suspect class, the *Martinsville* Court consistently <u>treated</u> transgender status as a suspect class.

held that, "[h]ere, the school district persisted in treating the three plaintiffs worse that other boys *because of their transgender status*." *Id*. at 772 (emphasis added).

Similarly, the plaintiffs in *Skrmetti*, urged the Supreme Court to treat transgender individuals as members of a suspect class and the Court expressly rejected this argument:

> The plaintiffs separately argue that SB1 warrants heightened scrutiny because it discriminates against transgender individuals, who the plaintiffs assert constitute a quasi-suspect class. See Brief for Respondents in Support of Petitioner 37-38. This Court has not previously held that transgender individuals are a suspect or quasi-suspect class.

*Skrmetti,* 145 S. Ct. 1816, 222 L. Ed. 2d 136, 155, 2025 BL 211307, at *13 (2025).

In *Skrmetti,* the Supreme Court makes clear it is not prepared to treat transgender individuals as members of a suspect or quasi-suspect class, and it gave no indication it would ever find such individuals to belong to a suspect or quasi-suspect class in the future. *See Id.* Thus, this Court's treatment of transgender individuals as members of a suspect class in *Martinsville* and *Whitaker* is clearly at odds with *Skrmetti*. This erroneous treatment alone at least warrants reconsideration of *Martinsville* and *Whitaker*. When combined with the additional errors noted below, *Martinsville* and *Whitaker* must be overturned.

**B.    This Court's Reliance On *Bostick* In Deciding *Martinsville* Is Rebuked By *Skrmetti*.**

The *Martinsville* decision is wholly reliant on a misapplication and a misinterpretation of *Bostock v. Clayton County*, 590 U.S. 644 (2020). In *Martinsville*, this Court concluded:

> Applying *Bostock*'s reasoning to Title IX, we have no trouble concluding that discrimination against transgender persons is sex discrimination for Title IX purposes, just as it is for Title VII purposes. As *Bostock* instructs, we ask whether our three plaintiffs are suffering negative consequences (for Title IX, lack of equal access to school programs) for behavior that is being tolerated in male students who are not transgender. *See id.* at 1741. Our decision in *Whitaker* followed this approach.

*Martinsville,* 75 F.4th at 769. To reiterate, as noted above, the Court stated, "Applying *Bostock*'s reasoning to Title IX, we have no trouble concluding that discrimination against transgender persons is sex discrimination for Title IX purposes, just as it is for Title VII purposes." *Id*.

The Plaintiffs in *Skrmetti* urged the Supreme Court to use the *Bostock* analysis in their case. *United States v. Skrmetti,* 145 S. Ct. 1816, 222 L. Ed. 2d 136, 156, 2025 BL 211307, at *15 (2025) ("The plaintiffs urge us to apply Bostock's reasoning to this case"). The Supreme Court expressly rejected that proposition. *United States v. Skrmetti,* 145 S. Ct. 1816, 222 L. Ed. 2d 136, 157, 2025 BL 211307, at *15 (2025). ("We have not yet considered whether *Bostock's* reasoning reached beyond the Title VII context, and we need not do so here.").

By importing a Title VII framework into the Title IX analysis, the Seventh Circuit in *Whitaker* and *Martinsville* has adopted a position rejected by the Supreme Court in *Skrmetti* and has overlooked the reality that "Title VII . . . is a vastly different statute from Title IX." *Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167, 175 (2005) (citations omitted). This Court's application of the *Bostock* rationale outside the Title VII setting is plainly at odds with *Skrmetti* and warrants overturning *Martinsville* and *Whitaker*.

> **C.** **_Skrmetti_ Makes It Clear In _Whitaker_ and _Martinsville_ This Court Applied The Wrong Test To Ascertain Whether The Policy At Issue Ran Afoul Of The Equal Protection Clause And Title IX.**

In *Whitaker* and *Martinsville*, this Court analyzed whether the policy at issue treated a biological male student in the same manner as it treated transgender male student. *Martinsville*, 75 F.4th at 769 ("As *Bostock* instructs, we ask whether our three plaintiffs are suffering negative consequences (for Title IX, lack of equal access to school programs) for behavior that is being tolerated in male students who are not transgender. See *id*. at 1741. Our decision in *Whitaker* followed this approach.").

This approach is irreconcilable with *Skrmetti*. First, as stated in Section I(A), *supra,* transgender individuals are not members of a suspect or quasi-suspect class. *See United States v. Skrmetti,* 145 S. Ct. 1816, 222 L. Ed. 2d 136, 155, 2025 BL 211307, at \*13 (2025). Second, as explained in Section I(B), *supra,* the *Bostock* reasoning was never intended to be applied outside the Title VII context. *United States v. Skrmetti,* 145 S. Ct. 1816, 222 L. Ed. 2d 136, 157, 2025 BL 211307, at \*15 (2025). Finally, and perhaps most importantly, *Skrmetti* makes clear the proper test is whether the policy at issue treats biological males the same as biological females. In *Whitaker* and *Martinsville*, it does.

In *Skrmetti*, the Supreme Court explained how *Bostock* was being misapplied to SB1 because the *Bostock* decision was based on sex and did not create a suspect class for transgender individuals:

> Applying that test, we held that, "[f]or an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex." *Id* ., at 662, 140 S. Ct. 1731, 207 L. Ed. 2d 218. In such a case, the employer has penalized a member of one sex for a trait or action that it tolerates in members of the other. *Ibid.*

*United States v. Skrmetti,* 145 S. Ct. 1816, 222 L. Ed. 2d 136, 156, 2025 BL 211307, at \*15 (2025).

As it pertains to Tennessee SB1, the Court stated:

> Here, however, SB1 does not mask sex-based classifications. For reasons we have explained, the law does not prohibit conduct for one sex that it permits for the other. Under SB1, *no* minor may be administered puberty blockers or hormones to treat gender dysphoria, gender identity disorder, or gender incongruence; minors of *any* sex may be administered puberty blockers or hormones for other purposes.

*United States v. Skrmetti*, 145 S. Ct. 1816, 222 L. Ed. 2d 136, 153, 2025 BL 211307, at \*12 (2025) (emphasis original).

*Skrmetti* sets forth the applicable criteria for upholding laws and/or policies that may impact transgender individuals; to wit, "the law does not prohibit conduct for one sex that it permits

for the other." *Id*. Consequently, per *Skrmetti*, the appropriate inquiry in evaluating the bathroom and locker room policy at issue is whether the policy prohibits conduct by biological males that it permits for biological females. *See Id*. This is completely at odds with *Whitaker* and *Martinsville*, where this Court determined the policy at issue permitted conduct by biological boys that it prohibited for transgender boys. *See Martinsville,* 75 F.4th at 772-73. Again, this is the wrong criteria.

Furthermore, *Skrmetti* directs the reviewing court to carefully consider the application of the policy at issue to biological males versus biological females. *See, e.g., United States v. Skrmetti*, 145 S. Ct. 1816, 222 L. Ed. 2d 136, 157, 2025 BL 211307, at *16 (2025) (where the majority reviews and summarily dismantles the hypotheticals raised in Justice Sotomayor's dissent because they fail to correctly apply SB1 to biological males and biological females).

Here, Board Policy 5514 requires individuals to use the bathroom corresponding with their sex assigned at birth. The policy is applied exactly the same to male students as it is applied to female students. Biological male students are assigned male at birth and thus must use the bathroom corresponding with their sex (i.e., the boy's bathroom). Biological female students are assigned female at birth and thus must use the bathroom corresponding with their sex (i.e., the girl's bathroom).

The District expects Plaintiff to use the same flawed argument erroneously relied upon by this Court in *Whitaker* and *Martinsville* and rejected by the Supreme Court in *Skremetti*. Specifically, Plaintiff will argue the District will not permit D.P. (a biological male, transgender female student) to use the girl's bathroom, which is conduct in which the District permits biological female students to engage. As explained above, this argument is flawed because, per *Skrmetti*, in analyzing Policy 5514, the proper test is whether biological males are permitted to engage in

conduct that is prohibited for biological females—not whether cisgender individuals are permitted to engage in conduct that is prohibited for transgender individuals.

Further, Plaintiff's anticipated argument falls squarely into the realm of flawed logic proffered in Justice Sotomayor's *Skrmetti* dissent. *See United States v. Skrmetti*, 145 S. Ct. 1816, 222 L. Ed. 2d 136, 157, 2025 BL 211307, at *16 (2025). Policy 5514 does not "permit" biological female students to use the girl's bathroom. Policy 5514 <u>requires</u> biological female students to use the bathroom corresponding with their sex assigned at birth. In exactly the same manner, Policy 5514 <u>requires</u> biological male students to use the bathroom corresponding with their sex assigned at birth. Framed in the *Skmretti* context, Policy 5514 prohibits biological female students from using the bathroom that fails to correspond with their sex assigned at birth. In exactly the same manner, Policy 5514 prohibits biological male students from engaging in <u>exactly</u> the <u>same</u> <u>conduct</u> – i.e., using the bathroom that fails to correspond with their sex assigned at birth.

In *Skmretti*, the Supreme Court notes, "changing a minor's sex or transgender status does not alter the application of SB1." *United States v. Skrmetti,* 145 S. Ct. 1816, 222 L. Ed. 2d 136, 157, 2025 BL 211307, at *15 (2025). The same applies to the instant case. It is undisputed D.P. is a biological male student who was assigned male at birth. Policy 5514 requires D.P. to use the bathroom corresponding with D.P.'s sex assigned at birth. If we change D.P. sex to female, the application of Policy 5514 remains the <u>same</u>. D.P. would still have to use the bathroom corresponding with D.P.'s sex assigned at birth. If we remove D.P.'s transgender status, the application of Policy 5514 remains the <u>same</u>. D.P. would still have to use the bathroom corresponding with D.P.'s sex assigned at birth. Thus, per *Skrmetti*, Policy 5514 does not run afoul of the Equal Protection Clause or Title IX.

Because *Whitaker* and *Martinsville* applied the wrong test, the two cases must be reconsidered. When the correct test is applied, per *Skrmetti*, the two cases must be overturned, along with their application to the instant case.

> **D.** **In *Whitaker* and *Martinsville*, This Court Erred In Finding Gender Identity Discrimination To Be A Form Of Sex Discrimination Prohibited By Title IX.**

The entire foundation of *Whitaker* and *Martinsville* is that gender identity discrimination is inherently a form of sex discrimination prohibited by Title IX. As the Seventh Circuit put it in *Martinsville*. "[t]he crucial question for the Title IX theory in both of the cases now before us, just as in *Whitaker*, is one of law: how does one interpret Title IX's prohibition against discrimination 'on the basis of sex' as applied to transgender people? In *Whitaker*, we answered that discrimination against transgender students is a form of sex discrimination." *Martinsville*, 75 F.4th at 769. However, the Supreme Court has rejected that position in *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 867, 144 S. Ct. 2507, 2509–10 (2024).

*Dep't of Educ. v. Louisiana*, involved a challenge to the Biden Administration's new Title IX rule.[4] Section 106.10 of the new rule codified the exact rationale expressed by this Court in *Martinsville*: "Discrimination on the basis of sex includes discrimination on the basis of … gender identity." The new rule even invoked *Whitaker* as support for its interpretation. 89 Fed. Reg. at 33802.

The new rule was challenged in eight cases around the country and enjoined in <u>every</u> one of them, primarily on the grounds that redefining sex discrimination to include "gender identity" discrimination is inconsistent with the text of the Title IX statute.[5] In two of the cases, the

---

[4] *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33474 (April 29, 2024).

[5] *Louisiana v. U.S. D.O.E.*, 737 F. Supp. 3d 377, 396–400 (W.D. La. June 13, 2024), *stay pending appeal denied by 5th Circuit*, No. 24-30399, 2024 WL 3452887 (July 17, 2024); *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 529–38 (E.D. Ky. June 17, 2024), *stay pending appeal denied by 6th Circuit*, No. 24-5588,

Department of Education filed an application for a stay of the injunctions to the United States Supreme Court. In its applications, the Department of Education argued, specifically, that the lower courts "erred in enjoining Section 106.10's inclusion of gender-identity discrimination."[6] And the basis for its argument was exactly the same as the rationale underlying *Whitaker* and *A.C.*: that "discrimination based on gender identity 'is sex discrimination because [it] necessarily involves consideration of a person's sex.'" *Supra* n.6 at 9 (quoting the rule); *id.* at 28–29, 33; *compare A.C.*, 75 F.4th at 769 (7th Cir. 2023) ("discrimination against transgender students is a form of sex discrimination.").

Furthermore, in the stay application, the United States Solicitor General argued any decision invalidating § 106.10 creates a "square conflict" with *Martinsville* and *Whitaker*.[7] The Department of Education itself recognized both the new rule and *Martinsville* and *Whitaker* depend on the same flawed interpretation of Title IX strongly reinforces the relevance of the Supreme Court's decision.

---

2024 WL 3453880 (July 17, 2024); *Kansas v. U.S. D.O.E.*, 739 F. Supp. 3d 902, 919–23 (D. Kan. July 2, 2024); *Texas v. United States*, 740 F. Supp. 3d 537, 545–50 (N.D. Tex. July 11, 2024); *Carroll Indep. Sch. Dist. v. U.S. D.O.E.*, 741 F. Supp. 3d 515, 521–23 (N.D. Tex. July 11, 2024); *Arkansas v. U.S. D.O.E.*, 742 F. Supp. 3d 919, 940–45 (E.D. Mo. July 24, 2024); *Oklahoma v. Cardona*, 743 F. Supp. 3d 1314, 1323–27 (W.D. Okla. July 31, 2024); *Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *4–*5 (11th Cir. Aug. 22, 2024).

Two of those cases reached a final judgment and vacated the rule nationwide. *Tennessee v. Cardona*, 762 F. Supp. 3d 615 (E.D. Ky. Jan. 9, 2025); *Carroll Indep. Sch. Dist. v. U.S. D.O.E.*, No. 4:24-CV-461, 2025 WL 1782572 (N.D. Tex. Feb. 19, 2025). The Trump Administration did not appeal. A few parties moved to intervene to appeal and revive some aspects of the rule (related to sexual harassment and pregnant students), and those issues are still pending, but no one sought to intervene to appeal and revive the provision redefining sex discrimination to include gender identity. *See Carroll Indep. Sch. Dist. v. United States Dep't of Educ.*, No. 4:24-CV-461, 2025 WL 1782571, at *2 (N.D. Tex. May 15, 2025).

[6] Application for a Partial Stay at 28–36, *United States Department of Education v. Louisiana*, No. 24A79 (filed July 22, 2024), *available at* https://bit.ly/4gJBE8X.

[7] Stay Application, supra n.6, at 17–18.

In unanimously denying the stay request, the Supreme Court necessarily concluded the Department of Education was unlikely to succeed in persuading the Court § 106.10 is consistent with Title IX. Indeed, that is how the Eleventh Circuit understood the decision. *See Alabama v. U.S. Sec'y of Educ.,* No. 24-12444, 2024 BL 293948, at *12 (11th Cir. Aug. 22, 2024) ("[B]y accepting that the plaintiffs were entitled to preliminary injunctive relief, the Court had to have found that all the requirements for a preliminary injunction were met, including likelihood of success on the merits, irreparable harm, and the balance of the equities."). While the Supreme Court's decision was on a stay application, the fact all nine Justices agreed § 106.10 should remain enjoined pending appeal is striking. Lower courts, including the Seventh Circuit, have given stay decisions from the Supreme Court precedential weight. *See, e.g., Cassell v. Snyders*, 990 F.3d 539, 547 (7th Cir. 2021).

The Supreme Court's decision fatally undermined the rationale upon which this Court based *Whitaker* and *Martinsville*. The Supreme Court effectively rejected the argument Title IX, as written, includes gender identity discrimination as a form of sex discrimination. When we combine this ruling with *Skrmetti*, it becomes clear that in Title IX "sex" means "biological sex" and does not include gender identity. "Sex discrimination" means discrimination based on biological sex and does not include gender identity discrimination.

Thus, *Whitaker* and *Martinsville* must be overturned. And, with *Whitaker* and *Martinsville* cast aside, the instant case involving the Mukwonago Area School District and Board Policy 5514 is straightforward. Title IX regulations explicitly permit schools to "provide separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. § 106.33. A policy that requires students to use the bathroom/locker room corresponding to the student's sex assigned at birth does not run afoul of Title IX or the Equal Protection Clause.

*Whitaker* and *Martinsville* rest on a misreading of Title IX, a misapplication of *Bostock*, and an improper extension of Title VII principles into Equal Protection and Title IX jurisprudence. In light of the Supreme Court's clear guidance in *Skrmetti* and *Dep't of Educ. v. Louisiana*, these precedents must be overruled.

## II. THE DISTRICT'S BATHROOM USE POLICY IS VALID UNDER THE EQUAL PROTECTION CLAUSE AND TITLE IX.

As stated in the Introduction Section, *supra*, *Skrmetti,* coupled with the Supreme Court's ruling in *Dep't of Educ. v. Louisiana*, *Skrmetti*, provides the framework upon which this Honorable Court may find the policy at issue compliant with both the Equal Protection Clause and Title IX.

### A. The District's Sex-Segregated Bathroom/Locker Room Use Policy Is Valid Under the Equal Protection Clause.

Applying the Equal Protection framework clarified in *Skrmetti*, the District's Bathroom Use policy—requiring students to use facilities corresponding to their biological sex—does ***not*** violate the Equal Protection Clause. To the contrary, it satisfies rational basis and intermediate scrutiny review, and does not run afoul of the Equal Protection Clause, contrary to this Court's prior holdings in *Whitaker* and *Martinsville*.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Such clause does not proscribe sex-based classifications, however; "[i]t simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citations omitted). "[L]aws distinguishing between men and women receive intermediate scrutiny; to survive a constitutional challenge, they must be "'substantially related' to achieving an 'important governmental objectiv[e].'" *United States v. Skrmetti*, 145 S. Ct. 1816, 222 L. Ed. 2d 136, 175, 2025 BL 211307, at *31 (2025) (citing *United States v. Virginia*, 518 U. S. 515, 533 (1996)).

In *Martinsville* and *Whitaker*, this Court applied heightened scrutiny to the policy at issue. *Martinsville*, 75 F.4th at 772 ("Per *Whitaker's* guidance, Martinsville's access policy relied on sex-based classification and is therefore subject to heightened scrutiny."). However, as the Supreme Court made clear in *Skrmetti*, a law treating biological males and biological females equally—as Tennessee's SB1 did—does not trigger heightened scrutiny. "The mere reference to sex," the Court emphasized, is not enough to require heightened review. *United States v. Skrmetti*, 145 S. Ct. 1816, 222 L. Ed. 2d 136, 151, 2025 BL 211307, at *10 (2025) (citing *Tuan Anh Nguyen v. INS*, 533 U. S. 53, 64 (2001) ("The issue is not the use of gender specific terms instead of neutral ones. Just as neutral terms can mask discrimination that is unlawful, gender specific terms can mask a permissible distinction.").

The District's policy fits squarely within this framework. It draws no distinctions based on sex or transgender status and applies equally to all students. As explained in Section I(C), *supra*, Policy 5514 <u>requires</u> biological female students to use the bathroom corresponding with their sex assigned at birth. In exactly the same manner, Policy 5514 <u>requires</u> biological male students to use the bathroom corresponding with their sex assigned at birth. The policy treats biological males and biological females equally. Policy 5514 does not permit conduct by biological females that is prohibited for biological males, and vice-versa.

In *Skmretti*, the Supreme Court noted, "changing a minor's sex or transgender status does not alter the application of SB1." *United States v. Skrmetti*, 145 S. Ct. 1816, 222 L. Ed. 2d 136, 157, 2025 BL 211307, at *15 (2025). Again, the same applies to the instant case. It is undisputed D.P. is a biological male student who was assigned male at birth. Policy 5514 requires D.P. to use the bathroom corresponding with D.P.'s sex assigned at birth. If we change D.P.'s sex to female, the application of Policy 5514 remains the same. D.P. would still have to use the bathroom

corresponding with D.P.'s sex assigned at birth. If we remove D.P.'s transgender status, the application of Policy 5514 remains the same. D.P. would still have to use the bathroom corresponding with D.P.'s sex assigned at birth. Thus, per *Skrmetti*, Policy 5514, which does not turn on sex or transgender status, is subject to the rational basis review.

Under rational basis review, which governs facially neutral policies, the policy is constitutional if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *United States v. Skrmetti*, 145 S. Ct. 1816, 222 L. Ed. 2d 136, 145, 2025 BL 211307, at *4 (2025) (quoting *FCC v. Beach Communications, Inc*., 508 U. S. 307, 313 (1993)). The District's Policy easily satisfies this standard: it advances legitimate governmental interests in safeguarding student privacy and safety, particularly within the elementary school context.

For the sake of argument, even if intermediate scrutiny applies, the District's decision to require students to use the bathroom conforming to their sex assigned at birth satisfies both prongs of the intermediate scrutiny analysis. The District's Bathroom Use Policy fulfills the first prong by serving important objectives of protecting the privacy interests of students in using the restroom separately from the opposite sex, which in turn justifies the provision of separate bathrooms for female and male students. *See, e.g*., *Adams v. School Board of St. John's County,* 57 F.4th 791 (11th Cir. 2022). The right to privacy has long been protected under the Constitution. *See, e.g., Quilici v. Vill. Of Morton Grove*, 695 F.2d 261, 280 (7th Cir. 1982) ("The right to privacy is one of the most cherished rights an American citizen has; the right to privacy sets America apart from totalitarian states in which the interests of the state prevail over individual rights."). Individuals have a legitimate and substantial interest in bodily privacy such that their nude body, genitalia, and other private parts are not exposed to persons of the opposite biological sex, and courts have

consistently recognized that the need for such privacy inheres in human dignity. *See, e.g., Doe v. Luzerne Cty.*, 660 F.3d 169, 176-77 (3d Cir. 2011); *Brannum v. Overton Cty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008); *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981). Ensuring student privacy is especially important in the elementary school setting, wherein students are less mature and only "on the threshold of awareness of human sexuality." *J.A. v. Fort Wayne Cmty. Schs.*, No. 1:12 CV 155 JVB, 2013 WL 4479229, *6 (N.D. Ind. Aug. 20, 2013) (citations omitted). As such, elementary-aged students "characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them." *J.D.B. v. North Carolina*, 564 U.S. 261, 272-73 (2011).

Moreover, separating elementary school restrooms by sex, and requiring usage tied to the sex assigned at birth, is substantially related to the achievement of the District's objectives of ensuring and maintaining student privacy, as students use the bathroom in a separate space from the opposite sex and are thereby protected against bodily exposure to the opposite sex. Ultimately, the District implemented a policy that respects and protects the privacy rights of all students, pursuant to which all individuals—regardless of sex— are treated equally. Therefore, Policy 5514 does not violate the Equal Protection Clause.

### B. The District's Bathroom Use Policy Is Valid Under Title IX.

In finding similar bathroom use policies in violation of Title IX, this Court stated in *Martinsville* the following:

> Applying *Bostock*'s reasoning to Title IX, we have no trouble concluding that discrimination against transgender persons is sex discrimination for Title IX purposes, just as it is for Title VII purposes. 75 F.4th 760, 769;

> and

We noted that neither Title IX nor its implementing regulations define the term "sex" and in looking to case law for guidance, we saw nothing to suggest that "sex" referred only to biological sex. 75 F.4th 760, 770.

Following *Skrmetti,* these conclusions have been eviscerated. As the Supreme Court makes clear, transgender individuals are not members of a suspect class. *See* Section I(A), *supra*. The Supreme Court never intended for the *Bostock* rationale to be applied outside the Title VII setting. *See* Section I(B), *supra*. And the policy at issue only violates Title IX if it treats biological males differently than biological females (which it does not). *See* Section I(C), *supra*.

The *Martinsville* Court's feigned ignorance regarding the meaning of "sex" in Title IX has also been rebuked. Ironically, the *Martinsville* Court decided to invoke the rationale in *Bostock*, while ignoring the portion of *Bostock* that explicitly defined the meaning of the word "sex". When addressing the same issue—i.e., the denotation of the word "sex," standing alone—the Supreme Court "proceed[ed] on the assumption" the term "sex," as used in Title VII, "refer[ed] only to biological distinctions between male and female." 140 S. Ct. 1731, 1739 (2020). As to any argument "sex" as used in Title VII may mean something different than "sex" as used in Title IX, the Supreme Court shut down that argument in *Dep't of Educ. v. Louisiana*. *See* Section I(D), *supra*.

"Sex" as used in Title IX means "biological sex" and any attempt to give it any other meaning requires a rejection of the clear guidance provided by the United States Supreme Court. And, separating school bathrooms based on biological sex comports with the language of and purpose behind Title IX.

A school violates Title IX by discriminating against a student based—at least in part—on such student's sex. However, Title IX contains an explicit exception to this rule; per 20 U.S.C. § 1686, educational institutions may "maintain[] separate living facilities for the different sexes." Title IX's implementing regulations confirm and expand on this exception, stating schools "may

provide separate toilet, locker room, and shower facilities on the basis of sex," provided such facilities are comparable regardless thereof. 34 C.F.R. § 106.33. Thus, Title IX allows educational institutions to provide separate restroom facilities based on sex notwithstanding its prohibition of sex-based exclusion from participation in educational programming and/or activities. *See* 20 U.S.C. § 1681(a).

This exception to Title IX's prohibition of sex-based differentiation would be nonsensical if "sex" meant anything other than biological sex. In other words, there would be no reason for allowing schools to separate bathrooms based on sex absent the physiological and anatomical differences between biological male students and biological female students. If "sex" denoted a fluid, subjective state of mind, the statutory provision concerning "sex-segregated facilities" serves no purpose.

In *Martinsville*, this Court found "sex" to include gender identity. 75 F.4th 760, 770. The Supreme Court rejected similar attempts to inject gender identify in Title IX in *Dep't of Educ. v. Louisiana*. Thus "sex" in Title IX means "biological sex". And "sex discrimination" means denying benefits or opportunities to one biological sex that are afforded to the other biological sex.

Title IX expressly permits schools to create separate bathrooms based on biological sex. It necessarily follows that Title IX then also permits schools to require students to use said bathrooms conforming to their biological sex. Under this scenario, a violation of Title IX would only exist if the facilities in one biological sex's bathroom were superior to the facilities in the other biological sex's bathroom. Here, however, no such claim has been made, nor does any disparity in facilities exist.

In this case, Policy 5514 applies <u>equally</u> to all individuals, <u>regardless</u> of sex and/or transgender status. As explained in Section I(C), *supra*, Policy 5514 does not "permit" biological

female students to use the girl's bathroom while denying the same access to transgender female students. Policy 5514 <u>requires</u> biological female students to use the bathroom corresponding with their sex assigned at birth. In exactly the same manner, Policy 5514 <u>requires</u> biological male students to use the bathroom corresponding with their sex assigned at birth. Framed in the *Skmretti* context, Policy 5514 prohibits biological female students from using the bathroom that fails to correspond with their sex assigned at birth. In exactly the same manner, Policy 5514 prohibits biological male students from engaging in <u>exactly</u> the <u>same</u> <u>conduct</u> – i.e., using the bathroom that fails to correspond with their sex assigned at birth.

In *Skmretti*, the Supreme Court noted, "changing a minor's sex or transgender status does not alter the application of SB1". *United States v. Skrmetti,* 145 S. Ct. 1816, 222 L. Ed. 2d 136, 157, 2025 BL 211307, at *15 (2025). The same applies to the instant case. It is undisputed D.P. is a biological male student who was assigned male at birth. Policy 5514 requires D.P. to use the bathroom corresponding with D.P.'s sex assigned at birth. If we change D.P.'s sex to female, the application of Policy 5514 remains the same. D.P. would still have to use the bathroom corresponding with D.P.'s sex assigned at birth. If we remove D.P.'s transgender status, the application of Policy 5514 remains the same. D.P. would still have to use the bathroom corresponding with D.P.'s sex assigned at birth. Thus, Policy 5514 does not run afoul of Title IX.

Finally, even before *Skmretti*, Policy 5514 did not run afoul of Title IX because, as explained above, it did not discriminate against male or female students. Title IX was introduced in Congress in direct "response to significant concerns about discrimination against women in education" and with two objectives in mind: (1) "to avoid the use of federal resources to support discriminatory practices"; and (2) "to provide individual citizens effective protection against those practices." *Neal v. Bd. of Trustees of Cal. State Univs*., 198 F.3d 763, 766 (9th Cir. 1999) (cleaned

up); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979). And while Title IX's application has expanded since its introduction to Congress in 1971, its foremost intent remains—providing equal access to educational opportunities, regardless of sex. Title IX provides no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

None of challenged policies (i.e., Policy 5514, the bathroom policy in *Whitaker*, the bathroom policy in *Martinsville*) excluded individuals from anything on the basis of sex. In *Whitaker* and *Martinsville*, the Seventh Circuit realized this reality, so the Court created a new basis upon which to decide the policies ran afoul of Title IX. First, the Court invoked the school district's biological sex-based bathroom policy. *Whitaker*, 858 F.3d at 1051 ("This policy is inherently based upon a sex-classification and heightened review applies."). Then, the Court shifted the focus from the sex-based policy itself to how that policy may impact students who "fail to conform to the sex-based stereotypes associated with their assigned sex at birth" and identify as transgender; "[t]these students," the Court said, "are disciplined … if they choose to use a bathroom that conforms to their gender identity." *Id*. The Seventh Circuit then invoked the *Bostock* rationale to find "sex-based stereotypes" to be a form of sex discrimination under Title IX. *Martinsville*, 75 F. 4th at 769.

The majority of this brief delineates the errors in the Seventh Circuit's rationale. But on top of that, Policy 5514 does not admit students to a particular bathroom based on sex-based stereotypes. D.P. (a biological male) wants to use the girls' restroom because D.P. (a biological male) identifies as female. But Policy 5514 does not admit students to the girls' restroom based on whether they "walk more femininely, talk more femininely, dress more femininely, wear make-

up, have [their] hair styled, [or] wear jewelry." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989) (plurality op.) (citations omitted). Rather, "[t]he bathroom policy separates bathrooms based on biological sex, which is not a stereotype." *Adams*, 57 F.4th 791, 809 (11th Cir. 2022); *see Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (noting that stereotypes are not "immutable characteristic[s] determined solely by accident of birth."). And Policy 5514 requires students to use the bathrooms based on biological sex, which, again, is not a stereotype.

The fact that the *Martinsville* Court objected to a policy that impacts boys and girl equally reveals the case was not about alleged sex discrimination; but rather was about alleged transgender discrimination. But the Supreme Court has never recognized transgender status as a protected class. *See* Section I(A), *supra*. And the Supreme Court has rejected the notion unlawful sex discrimination under Title IX includes gender identity discrimination. *See* Section I(D), *supra*.

Thus, in order to find Policy 5514 in violation of Title IX, this Court must find the policy denies opportunities to biological female students it affords to biological male students. As explained in Section I(C), *supra*, Policy 5514 does no such thing. Thus, nothing about Policy 5514 violates the provisions of Title IX.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant-Appellant respectfully requests the Court take the following actions: (1) overrule *Whitaker* and *Martinsville* in light of *Skrmetti;* (2) reverse the July 11, 2023, Order of U.S. District Court for the Eastern District of Wisconsin; (3) hold District Policy 5514 (the "District's Bathroom Use Policy") to be valid under both the Equal Protection Clause and Title IX; and (4) remand the case to the District Court for dismissal consistent with this ruling.

*Signature on next page.*

Dated at Waukesha this 24th day of July, 2025.

Respectfully submitted,

   /s/ *Joel S. Aziere*
Joel S. Aziere (WI Bar No.: 1030823)
jaziere@buelowvetter.com
Hunter M. Cone (WI Bar No.: 1123048)
hcone@buelowvetter.com

**Buelow Vetter Buikema Olson & Vliet, LLC**
20855 Watertown Road, Suite 200
Waukesha, Wisconsin 53186
Phone: (262) 364-0300
Facsimile: (262) 364-0320

*Attorneys for Defendants-Appellants, Mukwonago Area School District and Joseph Koch*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief conforms to Circuit Rule 32 for the following reasons:

1. This brief complies with the type-volume limitations set forth in Circuit Rule 32(c) because it contains 6,649 words, calculated using the "Word Count" feature of Microsoft Word.

2. This brief complies with the typeface and type style requirements set forth in Circuit Rule 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Times New Roman.

Dated at Waukesha this 24th day of July, 2025.

BY:  /s/ *Joel S. Aziere*
Joel S. Aziere (WI Bar No.: 1030823)

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished thereby.

Pursuant to Circuit Rule 31(b), I certify that I will transmit fifteen (15) copies of this Reply Brief of Defendants-Appellants to the Court within seven (7) days of receiving notice that this Court has accepted the electronic brief for filing.

Dated at Waukesha this 24th day of July, 2025.

BY:  /s/ *Joel S. Aziere*
Joel S. Aziere (WI Bar No.: 1030823)